## COHEN vs. THE STATE.

1. GAMING: *What evidence sufficient under indictment for.*
   Under an indictment for betting on a Faro Bank, proof that the defendant bet chips representing money on any day prior to the finding of the indictment and within the period of limitation, is sufficient.

2. CRIMINAL LAW: *Reasonable doubts, etc.*
   The rule that the guilt of the accused must be established to the exclusion of every other hypothesis, only applies in cases depending on circumstantial evidence.

APPEAL from *Garland* Circuit Court.

Hon. J. M. SMITH, Circuit Judge.

*Attorney General* for the State.

ENGLISH, CH. J.:

The appellant, Isaac Cohen, was indicted in the Circuit Court of Garland County for gaming, the indictment charging:

"That said Isaac Cohen, on the 10th day of January, 1877, in the county aforesaid, did then and there unlawfully bet money on a certain gaming table or device commonly called 'Faro Bank,' which said Faro Bank was adapted, devised and designed for the purpose of playing a game of chance, at which said game money could have been won and lost, contrary to the form of the statute, etc., and against the peace, etc."

The defendant was tried on a plea of not guilty.

Wm. Sumpter, a witness for the State, testified in substance, that he lived in the City of Hot Springs, and knew defendant. Some time in the month of January, 1877, he saw defendant betting at a gaming table, commonly called "Fáro Bank," at Malen & Lamis' saloon. Henry Hecox was dealing the game at the time. He did not see defendant betting money at said game, but saw him betting checks, which he supposed represented money. He saw defendant hand over the money for the checks, and then bet them off at the game. Witness had never bet at a

Faro Bank, but he understood the game. Hecox had a Faro box in which he placed a deck of cards, also had a number of cards pasted on a table. The checks used in carrying on the game were made of ivory, bone or some kind of composition. In Faro Bank games, they usually represent money. Defendant bet his checks on the cards on the table, and then Mr. Hecox would draw the cards from the Faro box one by one, and if the card came up like the one the checks were bet on, then defendant would win; if not, he would lose. Witness did not remain long, and did not know whether defendant won or lost money on the game. This occurred in Garland County in January, 1877.

On cross-examination, he stated that he knew the chips defendant bet on the game represented money, because he saw him pay money for them. He did not know that the game upon which the checks were bet, by defendant, was a game of Faro Bank, but it was so commonly called.

Here the State closed.

Dr. Sturn, witness for defendant, testified, that defendant was sick in bed on the 10th of January, 1877, the day charged in the indictment. That he attended him as physician, and knew that he was not out of his room on that day or night.

Frank Flynn, witness for defendant, testified : " I am familiar with the rules of gaming at a Faro Bank. Chips do not necessarily represent money or any thing of value. Money and chips are frequently bet simply for the purpose of keeping the game running, to induce others to bet, and are often bet for fun."

Martin Hoack, witness for defendant, testified: " I am familiar with the rules of the game of Faro Bank; and know that chips do not always represent money or a thing of value. I know that money or chips bet for fun do not win or lose."

On cross-examination : " that in his country (Germany) when a person pays money for chips, he means business, and would not buy chips and pay money for them to bet off for amusement."

The above was all the evidence, as set out in the bill of exceptions signed by the judge.

At the instance of the State, the court gave two instructions to the jury, which, it seems were not objected to by the defendant, and need not be set out.

The defendant moved the following instructions, which were given by the court :

"*First*—The jury are instructed by the court, that it is incumbent on the State to prove every material allegation in the indictment, and unless the jury believe from the evidence, that the defendant did bet money upon the game, as charged in the indictment, they must acquit.

"*Second*—That if they had, from the evidence, a reasonable doubt as to the guilt of the defendant, they must acquit.

"*Third*—That unless they are satisfied beyond a reasonable doubt, from the evidence, *first*, that defendant bet money, and *second*, that he bet it upon a game of chance called Faro Bank, as charged in the indictment, they must acquit."

The defendant further asked the court to instruct the jury :

"*Fourth*—That every material allegation of the indictment must be proved as therein alleged, and unless the same is so proven to their satisfaction beyond all reasonable doubt, they must acquit.

"*Fifth*—That it devolves on the State to make strict proof of every material allegation in the indictment as laid, in order to convict the defendant, and unless such proof is so made, and unless the same excludes every other hypothesis but the guilt of the defendant, they must acquit."

The court refused these two instructions and gave the following general charge :

"The indictment in this case is for betting money upon a gaming table commonly called Faro Bank, and the charge so

made must be proven as alleged; and that money was bet. But if the jury believe from the evidence, that in carrying on the game, chips were used instead of money, and that these chips represented money paid into the bank, and in that way money was bet, this would be sufficient proof of betting money. If the jury are satisfied from the evidence, that money was bet, it is immaterial how it was done, whether by betting the money directly, or through chips, which represented the same.

" The jury will take the case, and if from the testimony in the whole case, they believe, beyond a reasonable doubt, that defendant is guilty, they will return a verdict of guilty, and assess his punishment at not less than fifty, nor more than one hundred dollars; on the other hand, if from the testimony in the whole case, they have a reasonable doubt of his guilt, they will return a verdict of not guilty."

To this general charge the defendant objected.

The jury found the defendant guilty, and assessed his punishment at a fine of $50.

He made a motion for a new trial, which was overruled, and he presented a bill of exceptions, which the court signed after making corrections in it. Defendant attempted to sustain the bill of exceptions originally drafted, by affidavits, but failed. Judgment in accordance with the verdict, and defendant appealed.

I. The evidence was sufficient to support the verdict. There was no conflict between the testimony of Wm. Sumpter and the testimony of Dr. Sturn. The former stated that he saw appellant betting at a Faro Bank sometime in the month of January, 1877. The latter stated that appellant was sick and confined to his bed, and not out of his room, during the day and night of the 10th of January, 1877, the day laid in the indictment as the time of the offense. The indictment was found at the May

Term, 1877. It was sufficient for the State to prove the offense to have been committed on any day before the finding of the indictment, and within the period of limitation. The particular day laid in the indictment was not material. *Scoggin* v. *The State, ante.*

The witness, William Sumpter, saw appellant pay to the keeper of the Faro Bank money for checks, and bet them off on the game. The checks represented the money. The Faro box, the cards, the table and the checks, were manifestly the machinery of the game, and the betting on the game was for money represented by the checks.

It seems from the testimony of appellant's witnesses that there are sometimes *sham* betters at Faro; men who seemingly bet to induce others to bet at the game; drummers for the concern; like sham bidders at a mock auction. But there was no evidence that appellant was a sham better. If this had been proven, perhaps the jury might have been disposed to double the fine they put upon him.

Nor was there any evidence that appellant merely went through the form of betting for amusement, but in fact wagered nothing. *Fagan* v. *State,* 21 Ark., 390. The jury no doubt believed from the proof that he paid money for the checks, and bet them off on the game, that he " meant business," to use the expression of the German witness.

II. The rule as to doubts, in misdemeanors as well as in felonies, is that the jury are not to find the defendant guilty upon the mere preponderance of evidence, but that they must be satisfied, beyond a reasonable doubt, that the proof sustains the material allegations of the indictment, otherwise they should acquit. *State* v. *King,* 20 Ark., 166.

In the first, second and third instructions moved for appellant and given by the court, the jury were told that it devolved upon

the State to prove the material allegations of the indictment beyond a reasonable doubt; and this was sufficient on the subject of doubts, which has become a hobby in all criminal cases, without repeating the rule in the language proposed by appellant's. fourth instruction.

The rule that the guilt of the accused must be established to the exclusion of any other hypothesis, applies in cases depending on circumstantial evidence, and not to a case like this, where the evidence was direct, and the case well enough made out if the jury believed the testimony of the witness Wm. Sumpter, and he was not impeached, nor his evidence contradicted.

There was nothing objectionable in the general charge of the court.

Affirmed.