Houston GREGORY, Jr. *v.* STATE of Arkansas

CR 99-820                                    15 S.W.3d 690

Supreme Court of Arkansas
Opinion delivered May 4, 2000

244

*David Bogard,* Judge;

*Gregory E. Bryant*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

LAVENSKI R. SMITH, Justice. Appellant Houston Gregory, Jr., appeals his convictions for capital murder, robbery, and theft from Pulaski County Circuit Court in connection with the death of Jimmy Ridenhour. Following the convictions, the jury imposed sentences of life without parole for capital murder, twenty-two years for robbery, and ten years for theft. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(2). On appeal, appellant challenges only the sufficiency of the evidence. He contends that the trial court erred in denying his motions for a directed verdict. We find no error and affirm.

*Facts*

In February 1996, Ridenhour worked at a Little Rock AutoZone parts store with Justin Hunt. Aside from work, the two were friends, and spent time together on weekends. According to Hunt, Ridenhour agreed to sell Hunt's gray 1987 Ford Mustang for a $100.00 commission. Ridenhour found a prospective buyer in Gregory. On February 23, 1996, during Ridenhour's lunch break at about 6:00 p.m., Ridenhour drove Hunt's Mustang to 420 West 22nd Street in North Little Rock to meet Gregory and discuss the sale. Hunt and Hunt's friend Andrew Pearlman followed in Pearlman's truck. Ridenhour and Hunt hoped to complete the sale during Ridenhour's break. Ridenhour pulled into the driveway of the home and went to the door. Hunt and Pearlman waited in their truck at the curb. Hunt testified that when they first got to Gregory's house, an occupant of the house told Ridenhour that Gregory was not home, so they drove both vehicles to a fast-food restaurant to eat. The occupant of the home was later identified as Eric Lamont Ticey. Upon their return, Ridenhour pulled up into the driveway at the residence. Ridenhour went inside and shortly thereafter came back out. He then told Hunt and Pearlman that the occupants of the house didn't want "some white guy's truck" parked in front of their house. By this time, appellant had arrived and was in the house with Ticey. Hunt and Pearlman moved their truck to a nearby parking lot and waited. They were about a block away as darkness approached. Hunt recalled that a tree partially obstructed their view of the house. Although the tree limited full view, Hunt and Pearlman did see two people come out of the house, get in the Mustang, and leave. However, they were unable to identify either of them as Ridenhour. About thirty minutes later, the car returned, and the driver backed it down the side of the house. After about ten minutes, the Mustang was driven away again and did not return. Hunt and Pearlman waited for about another half hour, and then drove past the house, and around the area, but did not find the car or Ridenhour. They then returned to the AutoZone to see if perhaps Ridenhour had returned there, but he had not returned. Hunt and Pearlman then went to the police, and reported the incident. They also informed Ridenhour's wife Sonja. Sonja testified her husband failed to call her from work that evening, as was his custom. She also testified that he was due to get off work at 9:00 p.m., and did not come home that night as expected.

Sonja further testified that he had come home late only twice in the almost eight years they had known each other. No one saw Ridenhour again alive.

On February 29, 1996, police found the Mustang abandoned at a MacDonald's restaurant fifteen to twenty blocks from Gregory's mother's house. Apparently, the car's interior had been wiped down and all fingerprint evidence erased. On March 4, 1996, while looking for stolen property, the sheriff's department discovered Ridenhour's body in an abandoned house one block from Gregory's sister's home. Ridenhour appeared to have been beaten and strangled. The body was partially clothed with a handcuff on one wrist. Police searched the residence at 420 West 22nd Street and found blood on the carpet and on a door-jamb to the bathroom. They also found a shotgun with blood on it.

Police questioned Gregory on February 27, 1996, and on March 6, 1996. He acknowledged Ridenhour had come to his residence, and that he had arranged to meet with him there. He asserted that Ridenhour could not find the car title on the car and so 'pawned' the car to Gregory for a few days for $40.00, so Gregory could try it out. Gregory also stated that after giving Ridenhour the $40.00, Ridenhour got in a small white car with two men and left. He then stated he used the car until February 24, 1996, when he again met Ridenhour and returned the car to him.

Approximately one year later on February 28, 1997, the prosecuting attorney filed a three-count felony information against Gregory charging him with capital murder, aggravated robbery, and theft of property. On March 11, 1997, the sheriff arrested Gregory pursuant to a bench warrant. Pulaski Circuit Court tried Gregory before a jury on February 9, 1999. He moved for a directed verdict at the close of the State's case and again at the close of all the evidence, based upon failure to identify him as the perpetrator of the charged crimes. The trial court denied both motions. The jury convicted him on all counts. Gregory timely filed his notice of appeal. On appeal, as noted, Gregory raises the single issue of sufficiency of the evidence.

## Sufficiency of the Evidence

■ A directed-verdict motion is a challenge to the sufficiency of the evidence. *McDole v. State*, 339 Ark. 391, 6 S.W.3d 74 (1999); *Ayers v. State*, 334 Ark. 258, 975 S.W.2d 88 (1998). When an appellant challenges the sufficiency of the evidence, we address the issue prior to all others. *Byrd v. State*, 337 Ark. 413, 992 S.W.2d 759 (1999). The test for determining sufficiency of the evidence is whether there is substantial evidence to support the verdict. Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Ladwig v. State*, 328 Ark. 241, 943 S.W.2d 571 (1997). We view the evidence in the light most favorable to the State. *Windsor v. State*, 338 Ark. 649, 1 S.W.3d 20 (1999); *Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992). Only evidence supporting the verdict will be considered. *Hendrickson v. State*, 316 Ark. 182, 871 S.W.2d 362 (1994); *Steggall v. State*, 340 Ark. 184, 8 S.W.3d 538 (2000).

## Circumstantial Evidence

■ A conviction must be supported by substantial evidence. *Sanders v. State*, 340 Ark. 163, 8 S.W.3d 520 (2000). The evidence supporting Gregory's conviction is entirely circumstantial in nature. However, circumstantial evidence may constitute substantial evidence. *Dixon v. State*, 311 Ark. 613, 846 S.W.2d 170 (1993). Guilt can be established without eyewitness testimony, and evidence of guilt is not less because it is circumstantial. *Trimble v. State*, 316 Ark. 161, 871 S.W.2d 562 (1994). A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Byrd, supra; Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997). Whether the evidence is direct or circumstantial, however, it must still meet the requirement of substantiality. It must force the fact-finder to reach a conclusion one way or the other without resorting to speculation or conjecture. *Chism v. State*, 312 Ark. 559, 853 S.W.2d 255 (1993); *see also, Booker v. State*, 335 Ark. 316, 984 S.W.2d 16 (1998).

■■ The longstanding rule in the use of circumstantial evidence is that the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused to be substantial.

*Smith v. State*, 337 Ark. 239, 988 S.W.2d 492 (1999); *Smith v. State*, 282 Ark. 535, 669 S.W.2d 201 (1984); *Upton v. State*, 257 Ark. 424, 516 S.W.2d 904 (1974); *Jones v. State*, 246 Ark. 1057, 441 S.W.2d 458 (1969); *Johnson v. State*, 210 Ark. 881, 197 S.W.2d 936 (1946); *Turner v. State*, 192 Ark. 937, 96 S.W.2d 455 (1936); *O'Neal v. State*, 179 Ark. 1153, 15 S.W.2d 976 (1929); *Cohen v. State*, 32 Ark. 226 (1877). With respect to the exclusion of every other reasonable hypothesis, Judge Butler, speaking for the court, said in the case of *Bowie v. State*, 185 Ark. 834, 49 S.W.2d 1049 (1932):

> This demands that in a case depending upon circumstantial evidence the circumstances relied upon must be so connected and cogent as to show guilt to a moral certainty, and must exclude every other reasonable hypothesis than that of the guilt of the accused. Circumstances, however strong they maybe, ought never to coerce the mind of the jury to a conclusion of guilt if they can be reconciled with the theory that one other than the defendant has committed the crime, or that no crime has been committed at all.

*Johnson v. State*, 210 Ark. 881, 197 S.W.2d 936 (1946); *Carter v. State*, 324 Ark. 395, 921 S.W.2d 924 (1996). *See also, Studdard v. State*, 243 Ark. 73, 419 S.W.2d 134 (1967); *Kagen & Tibbett v. State*, 232 Ark. 189, 334 S.W.2d 865 (1960); *Taylor v. State*, 211 Ark. 1014, 204 S.W.2d 379 (1947). Once a trial court determines the evidence is sufficient to go to the jury, the question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Smith v. State*, 337 Ark. 239, 988 S.W.2d 492 (1999). Upon review, this court determines whether the jury resorted to speculation and conjecture in reaching its verdict. *Boone v. State*, 282 Ark. 274, 668 S.W.2d 17 (1984). Two equally reasonable conclusions as to what occurred merely gives rise to a suspicion of guilt. *Carter v. State*, 324 Ark. 395, 921 S.W.2d 924 (1996). We will set aside a judgment based upon evidence that did not meet the required standards, and thus left the fact finder only to speculation and conjecture. *Smith v. State*, 264 Ark. 874, 575 S.W.2d 677 (1979); *see also, Jones v. State*, 246 Ark.1057, 441 S.W.2d 458 (1969).

The evidence in the instant case is not huge in quantity, however what evidence there is does not admit of any other reasonable conclusion than the appellant's guilt. The appellant's own statement placed him at 420 West 22nd on February 23, 1996, with the

victim and Ticey, who was also charged in the murder. Forensic evidence admitted during trial consisting primarily of DNA taken from blood found at the residence established that the victim was killed at this address.

The medical examiner testified that strangulation and blunt-force injury to the head and chest caused Ridenhour's death. He also testified that some of the blunt-force injury was consistent with an injury that could be inflicted by the butt of a shotgun. Ridenhour's stomach contents were consistent with Hunt's and Pearlman's testimony of having gotten a hamburger at a local restaurant. The State put on DNA evidence that the chances were one in 400,000 that the blood in the carpet came from someone unrelated to Ridenhour, and one in six thousand the blood on the door-jamb came from someone unrelated to Ridenhour. The blood sample on the shotgun was not of a sufficient amount to allow any determination other than it was blood.

The testimony of Hunt and Pearlman showed that two men were in the house when Ridenhour went inside to negotiate the sale after returning from eating. A shotgun, which had blood on the butt and which the medical examiner testified could have caused the blunt trauma to Ridenhour, was recovered from appellant's home. Hunt and Pearlman observed Hunt's car being driven to the side of the house, which is consistent with the body being moved. Ridenhour's body was found one block from appellant's sister's house. Appellant's own statement placed him at his sister's house that evening. The car was recovered fifteen to twenty blocks from appellant's mother's home, where appellant's own statement placed him that weekend. Appellant's own statement also puts the mustang in his possession, when the car belonged to Hunt.

Ridenhour's disappearance coinciding with the failed car sale also implicates Gregory. Appellant's explanation for the sale's failure lacked credibility. Appellant stated Ridenhour was there by the time he got there and that the sale fell through because Ridenhour didn't have the title. Appellant asserts Ridenhour 'pawned' him the car for $40.00 so he could try it out for a couple of days. Appellant also asserted he returned the car to Ridenhour on the 22nd of February. Apparently, the jury did not believe this explanation. False and improbable statements may be admissible as proof of guilt. *Smith v. State*, 282 Ark. 535, 669 S.W.2d 201 (1984).

■ Even though the evidence against appellant is circumstantial, it is sufficient. Overwhelming evidence of guilt in cases based upon circumstantial evidence is not required. Here, the evidence of the guilt of appellant meets the test of substantiality. It is of sufficient force and character to compel reasonable minds to the conclusion appellant committed the crimes charged, and, thus, passes well beyond suspicion or conjecture. The evidence excludes every other reasonable hypothesis than that of the guilt of the appellant. We therefore hold that the trial court did not err in denying appellant's directed-verdict motions and accordingly, affirm.

*Rule 4-3(h)*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant, and no error has been found.

Affirmed.