Andrew S. ROSS, Jr. *v.* STATE of Arkansas

CR 01-324 57 S.W.3d 152

Supreme Court of Arkansas
Opinion delivered October 11, 2001

*William O. James, Jr.*, and *Clay T. Buchanan*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant, Andrew Ross, Jr., was charged with aggravated robbery and capital murder. He was convicted of capital murder and sentenced to life imprisonment without parole. For his only point on appeal, Mr. Ross claims that the State failed to present substantial evidence to support his conviction. We disagree and affirm.

In the early morning hours of September 4, 1999, Robert Branscum, owner and operator of the Quality Liquor Store in Blytheville, was killed in the parking lot of that store. A nearby business owner testified that he heard about five gunshots around 1:30 a.m. on September 4. Officers arrived on the scene at approximately 6:00 a.m. and found Mr. Branscum's body. He had been shot several times, and a later autopsy by the State Medical Examiner indicated that Mr. Branscum died as a result of gunshot wounds.

Around 2:30 a.m. on September 4, 1999, the Osceola police were called to the hospital in Osceola to investigate a patient suffering from a gunshot wound. The patient was Andrew Ross, Jr. When the police arrived, Mr. Ross was unclothed from the waist down due to the fact that he had been shot in the groin area. No one else in the room had similar wounds. A police officer found a pair of orange parachute pants only a few feet from Mr. Ross's body. The orange pants had two holes in the front groin area that tested positive for trace elements indicating a bullet hole. The officer also discovered a ski mask inside the pants. Later, a t-shirt with a hole in the "front shirttail area" was found in Mr. Ross's home. The trace-evidence examiner for the State Crime Laboratory found lead vapor residue around the hole in the t-shirt and testified that this finding would be consistent with the t-shirt being in "close proximity," or "within a matter of feet," of a firearm at the time of discharge.

Mr. Ross was arrested on September 26, 1999, at around 9:30 p.m. After being advised of his *Miranda* rights and waiving them, he gave two statements in which he admitted being present at the crime scene. In his first statement, Mr. Ross indicated that he did not know anything about the robbery until he drove by the liquor store and saw Carlos McFerrin run out in the street and flag him down.[1] In a subsequent statement given later that same night, he

---

[1] According to Mr. Ross's first statement, he and his girlfriend and his sister were in the car when Mr. McFerrin flagged him down. Later, he claimed they were not in the car.

admitted that he had seen Carlos McFerrin and Bernard Johnson less than an hour prior to the incident and that he knew they were planning to "hit" Quality Liquor. He also acknowledged he had been "hanging around" with Mr. McFerrin prior to the robbery.

According to his second statement, Mr. Ross knew the robbery was in progress and decided to drive by the liquor store because he "got worried about Carlos [McFerrin]." When he arrived at the liquor store, Mr. McFerrin flagged him down and asked for a ride. At that point, Mr. Ross put his car in park and got out of the car "to see what's going on." Mr. Ross explained that, after he got out of his car at the crime scene, the victim came out of the liquor store and "proceeded to shoot." He then saw both Mr. McFerrin and Mr. Johnson shoot the victim several times.

During both statements, Mr. Ross conceded that he had been shot in the groin by the victim. He told the police that the victim fired at him from the front of the liquor store and he "fell against [his] car," which was parked out on the road. This account, however, was contrary to the evidence of lead vapor residue on his t-shirt that indicated a close-range discharge of the firearm. He also claimed that, after he had been shot in the groin and after the victim had been shot, Mr. McFerrin tried to give his gun and mask to Mr. Ross: "I told him I wouldn't take the gun but I'd take the mask and I put it in my sweats and I drove off in the car."[2] Furthermore, Mr. Ross stated that, after the incident, he asked his aunt to take him to the Osceola hospital, rather than the Blytheville hospital, because he did not want anyone to "think I had something to do with the shooting that's over there by the liquor store." His aunt, Rosetta Ross, testified at trial that Mr. McFerrin rode in the car with her, her daughter, and Mr. Ross as she drove to the hospital in Osceola. Her testimony, however, was contradicted by Mr. Ross, who told the police that Mr. McFerrin did not go with them to Osceola.

The evidence also indicated that Mr. McFerrin was arrested on the morning of the murder, and $1,400 in cash was found on his person. In addition, a search of Mr. McFerrin's sister's residence revealed another $1,200 cash in a mattress. The two sets of bills were sequentially numbered. After Mr. McFerrin's arrest, he directed officers to 1201 Ferrell Street in Blytheville, where two

---

[2] In his first statement, Mr. Ross denied having a ski mask in his pants even though one had been found inside his pants while he was a patient at the Osceola hospital.

handguns were recovered in a floor furnace of an abandoned home.[3] One of the guns, a 9-millimeter Ruger, was identified by Mrs. Branscum as belonging to her husband. That gun had one expended round and one round jammed in the chamber. The other gun was a Ruger P89, or .357, which had five expended rounds. A DNA specialist at the State Crime Laboratory testified that Mr. Branscum's blood was found on both guns.

## I. Sufficiency of the Evidence

For his only point on appeal, Mr. Ross claims that the State failed to present substantial evidence to support his conviction for capital murder. During his trial, Mr. Ross made a motion for directed verdict at the end of the State's case and renewed that motion at the close of trial. Both motions were denied. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Britt v. State*, 344 Ark. 13, 38 S.W.3d 363 (2001). The test for determining sufficiency of the evidence is whether substantial evidence, direct or circumstantial, supports the verdict. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id.* On appeal, we review the evidence in the light most favorable to the appellee and consider only the evidence that supports the verdict. *Id.*

Circumstantial evidence may constitute substantial evidence to support a conviction. *Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000). Guilt can be established without eyewitness testimony and evidence of guilt is not less because it is circumstantial. *Id.* The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.* Overwhelming evidence of guilt is not required in cases based on circumstantial evidence; the test is one of substantiality. *Id.*

---

[3] Mr. McFerrin was also charged with Mr. Branscum's murder and tried separately. This court recently affirmed his capital-murder conviction and life sentence. *McFerrin v. State*, 344 Ark. 671, 42 S.W.3d 529 (2001).

 Mr. Ross was convicted of capital murder pursuant to the felony-murder provision of the capital-murder statute. Under that statute, a person commits capital murder if:

> (1) Acting alone or with one (1) or more other persons, he commits or attempts to commit . . . robbery . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances manifesting extreme indifference to the value of human life.

Ark. Code Ann. § 5-10-101(a) (Repl. 1997). The underlying felony is an essential element of a capital-felony murder charge. *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000). To prove capital-felony murder, the State must first prove the felony. *Id*. Nevertheless, the prosecution is not required to prove that a robbery occurred in order for a defendant to be convicted of capital-felony murder. *Id*. The prosecution only needs to prove that a defendant, acting alone or with his accomplices, attempted to commit a robbery and that, in the course of or in furtherance of the attempted robbery, he or an accomplice caused a death under circumstances manifesting an extreme indifference to the value of human life. *See* Ark. Code Ann. § 5-10-101(a)(1). An attempted robbery is established by proof that the defendant purposely engaged in conduct that constituted a substantial step in a course of conduct intended to culminate in the commission of a robbery. Ark. Code Ann. § 5-3-201(a)(2) (Repl. 1997).

In this case, Mr. Ross challenges the sufficiency of the evidence on grounds that the State failed to present substantial evidence that he committed or participated in the robbery. Specifically, he contends that there is no evidence that he ever owned, fired, or handled any of the weapons involved, and there is no evidence to connect him with any stolen property. His sufficiency challenge is without merit.

 We have held that the presence of an accused in the proximity of a crime in a manner suggestive of joint participation is a relevant factor in determining an accomplice's connection to a crime. *Stewart v. State*, 338 Ark. 608, 999 S.W.2d 684 (1999). Relevant factors include: (1) the presence of the accused in the proximity of a crime, (2) the opportunity to commit the crime, and (3) an association with a person involved in the crime in a manner suggestive of joint participation. *Id*. We have also said, where a defendant admitted he had been hiding from the police, that

"[e]vidence of flight to avoid arrest may be considered by the jury as corroborative of guilt." *Flowers v. State*, 342 Ark. at 51, 25 S.W.3d at 427.

In *Stewart*, this court concluded there was sufficient evidence to uphold a conviction for aggravated robbery "[g]iven appellant's knowledge that his associates contemplated a robbery, his admission that he arrived at the rest stop armed and loitered for about thirty minutes, his acknowledgment that he was in the bathroom [at the time the shooting took place], and testimony that appellant . . . fled with the group, and was later seen with a weapon." 338 Ark. at 616-617, 999 S.W.2d at 689-90. Likewise, the evidence in this case, viewed in the light most favorable to the State, demonstrated that Mr. Ross was present at the scene of the crime, knew that a robbery of the liquor store was planned, and had been "hanging around" with Mr. McFerrin. In addition, there was evidence indicating (1) that he was shot by the victim at close range; (2) that he had a ski mask in his possession; (3) that he or an accomplice shot Mr. Branscum repeatedly; (4) that Mr. Branscum died as a result of multiple gunshot wounds; and (5) that Mr. Ross and his accomplices fled from the crime scene.

As previously set out above, Mr. Ross gave two statements that were not only internally inconsistent with each other, but were also inconsistent with other evidence and testimony offered by the State. It is well-settled that the credibility of witnesses is an issue for the jury and not this court. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Sanford v. State*, 331 Ark. 334, 962 S.W.2d 335 (1998). The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the State's account of the facts rather than the defendant's. *Bell v. State*, 334 Ark. 285, 973 S.W.2d 806. We have also stated that a defendant's improbable explanations of suspicious circumstances may be admissible as proof of guilt. *Goff v. State*, 329 Ark. 513, 953 S.W.2d 38 (1997); *Thomas v. State*, 312 Ark. 158, 847 S.W.2d 695 (1993).

There was also evidence that, on at least one and possibly two occasions, Mr. Ross attempted to evade police. The police conducted a search of Mr. Ross's home on September 7, 1999. No one was in the home at the time of the search, but an officer testified that a videotape of the movie *Independence Day* was playing when he and another officer entered the home. The officer who was familiar with the movie testified that the movie had not been playing very long, thereby suggesting that someone had been in the home and left quickly when the police arrived. The police

visited Mr. Ross's home a second time on September 26, 1999. On that occasion, an officer found Mr. Ross "hiding" in a bedroom. The officer testified that the lights in the room were off, and he noticed Mr. Ross's legs "sticking out from a closet." This evidence of an attempt to avoid detection and arrest could be considered by the jury as corroborative of guilt. *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422. Based upon the foregoing, we conclude that the State presented substantial evidence that Mr. Ross participated in an attempted robbery and that, in the course of or in furtherance of the attempted robbery, he or an accomplice killed the victim. *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422; *Stewart v. State*, 338 Ark. 608, 999 S.W.2d 684.

Finally, Mr. Ross asserts that the State failed to prove that a robbery occurred. Specifically, he contends there was no evidence that any property was taken from Mr. Branscum and thus, his capital-murder conviction must fail. Once again, his argument is without merit. A defendant may be convicted of robbery even if no property is actually taken — the emphasis is on the express or implied threat of physical harm to the victim. *Harris v. State*, 308 Ark. 150, 823 S.W.2d 860 (1992). *See* Ark. Code Ann. § 5-12-102(a) (Repl. 1997). Moreover, the capital-felony murder statute does not require that an actual robbery take place; rather, an attempt to commit robbery is sufficient. *See* Ark. Code Ann. § 5-10-101(a)(1). We have already concluded that there was substantial evidence of Mr. Ross's participation in an attempt to rob Mr. Branscum. In any event, the evidence was undisputed that Mr. Branscum's gun was taken during the attack, and it was subsequently recovered at an abandoned house identified by Mr. McFerrin. Thus, there was sufficient evidence for the jury to find that a robbery occurred.

## II. Arkansas Supreme Court Rule 4-3(h)

The transcript of the record in this case has been reviewed in accordance with our Rule 4-3(h) which requires, in cases in which there is a sentence to life imprisonment or death, that we review all prejudicial errors in accordance with Ark. Code Ann. § 16-91-113(a). None have been found.

Affirmed.