Booker SIMMONS *v.* STATE of Arkansas

CA CR 04-368                                          199 S.W.3d 711

Court of Appeals of Arkansas
Opinion delivered December 8, 2004

[Rehearing denied January 12, 2005.\*]

---

\* HART and NEAL, JJ., would grant rehearing.

*The Cortinez Law Firm*, by: *Robert R. Cortinez, Sr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. Appellant Booker Simmons was convicted in a non-jury trial of criminal attempt to commit capital murder, a Class A felony. He was sentenced to 240 months in prison. On appeal, Simmons contends (1) that the trial court erred in denying his motion to dismiss because the State failed to establish by substantial evidence essential elements of the charged offense; and (2) that the evidence presented was insufficient to support a finding of guilt because the State's case was based entirely on circumstantial evidence. Because we find that there was substantial evidence in this case to support the conviction, we affirm.

Simmons was charged with criminal attempt to commit capital murder following an incident on June 22, 2002, involving Arkansas State Trooper David Moss. At trial, Trooper Moss testified to the following events. Moss explained that he was patrolling Interstate 30 during the early morning hours on June 22

and had stopped a white Dodge Stratus for a traffic violation. Moss stated that he walked up to the vehicle and asked the driver to roll down the window, but the driver took off at a high rate of speed. Moss then pursued the vehicle, which eventually came to a stop around the intersection of 20th Street and Percy Machin. At that point, Moss said, he chased the suspect on foot into the College Park area and he "got on the street." As he was looking around for the suspect, Moss noticed a Suburban parked down the street with its lights off, approximately thirty or forty yards away. Moss testified that after a few seconds, the Suburban's lights came on and the vehicle started moving toward him, and he jumped out of the way. Moss further testified that he was wearing his police uniform at the time and that the vehicle's headlights were on when it came at him.

Moss said that he observed a flash from the passenger-side window of the Suburban and heard a pop, at which point he said he realized it was a gunshot. According to his testimony, Moss believed that he had been "shot at." Moss said that the gunshot could have come from the driver, but he doubted it "since it was from the passenger side of the vehicle." He testified that he fired fourteen rounds at the vehicle as it continued down the street.

On cross-examination, Moss admitted that he did not hear the bullet whiz by his head or hit at his feet and that he did not know which direction the bullet came from. Moss also said that he "couldn't see anything in the vehicle" but that he could see the front windshield. When asked whether or not he knew if someone was firing at him, Moss replied that he was the only person out there on the street at 1:30 a.m. and that there was nobody else around, so he assumed they were shooting at him. Furthermore, when asked about the lighting in the area, Moss stated that "there was some street light — it's at night — there [were] some street lights on – kind of gave off [an] orange glow . . . around the area." Moss said that he would classify the lighting in the area as dim, but he had no problem seeing. The State conceded that Moss did not identify himself as a police officer.

Richard Beaston, a police officer for the City of North Little Rock, testified that during the early morning hours of June 22, 2002, he observed an SUV "sliding around the corner . . . sideways, with the lights off." He stated that he and Officer Chris Weaver pulled the vehicle over and identified Demetrius Clark as

the driver and Booker Simmons as the passenger. The officers testified that the Suburban was riddled with bullet holes and shattered glass.

The evidence showed that a weapon was found about a block and a half away from where the Suburban ultimately stopped, and that one spent shell casing was found inside the vehicle on the passenger side. Gary Lawrence, a firearms and toolmark examiner with the Arkansas State Crime Laboratory, testified that, in his opinion, the spent round came from the weapon that was found nearby.

Following the presentation of the State's case-in-chief, Simmons made a motion to dismiss based on the State's failure to meet its burden of proof. Among other things, Simmons asserted that because Trooper Moss did not identify himself as a police officer and because he could not say for sure that the shot was fired at him, the case should be dismissed. The trial court denied the motion.

Jonathon Wright then testified on behalf of Simmons. Wright admitted that he was the driver of the white Dodge Stratus that Trooper Moss had stopped on June 22, and he stated that he had led Moss on a vehicle pursuit and foot chase. Jonathon said that he ran to his aunt's house in an attempt to escape from Moss. At the time, Jonathon said, he did not notice a brown Suburban parked in the drive. He testified that he found his aunt, Felicia Wright, inside the house with her friend Mary. According to his testimony, he heard shots once he was inside. At that point, he said, he and Felicia looked out the window and saw a police officer running alongside the street towards a stop sign at the next block down.

On cross-examination, Jonathon admitted that he knew Demetrius Clark through his Aunt Felicia, but stated that he did not know Booker Simmons. Jonathon denied seeing Clark that night.

Felicia Wright testified that she and Clark were dating at the time of the incident on June 22, 2002, and that she had met Simmons through Clark. On that night, she said that Clark and Simmons came over to her house in Clark's Suburban and parked backwards in the driveway, with the front end facing the street. According to Felicia, she was standing outside with Clark, Simmons, and her friend Mary when she got a phone call from her nephew, Jonathon, asking her to open the door. At that point, she said, she ran up to the porch and tried to open the door for Jonathon as he approached along the side of the house. She said she

thought Clark and Simmons left in Clark's truck. She also said that she heard gunshots after she and Jonathon got into the house. She further testified that she was not sure when Clark and Simmons actually left, but that it was around the time Jonathon entered the house.

Mary Allen testified that she was Simmons's girlfriend and had met him at Felicia Wright's house on June 22. Allen said that she was outside of Felicia's house talking to Simmons when Felicia received the phone call from her nephew Jonathon. Afterwards, Allen said, she, Jonathon, and Felicia ran into Felicia's house and then heard gunshots. Allen testified that she did not know what happened to Simmons and Clark when she ran into the house with Felicia and Jonathon.

At the close of all the evidence, Simmons renewed his motion to dismiss on the same grounds as before. In addition, Simmons argued that the testimony of the witnesses on his behalf showed that there was no motive for criminal attempt to commit a homicide. The court again denied Simmons's motion.

On appeal, Simmons contends that the State failed to prove beyond a reasonable doubt each element of criminal attempt to commit capital murder, the offense of which he was convicted. Specifically, he argues that the State did not produce substantial evidence to show (1) that a shot was actually fired at Trooper Moss; (2) that Simmons knew or had reason to know that Trooper Moss was a police officer; and (3) that there was intent on his part to commit capital murder. Moreover, Simmons asserts that the circumstantial evidence presented by the State in this case was insufficient to support his conviction.

Under Arkansas Code Annotated section 5-10-101(a)(3) (Repl. 1997), a person commits capital murder if:

> With the premeditated and deliberated purpose of causing the death of any law enforcement officer, jailer, prison official, firefighter, judge, or other court official, probation officer, parole officer, any military personnel, or teacher or school employee, when such person is acting in the line of duty, he causes the death of any person[.]

Furthermore, a person commits criminal attempt to commit capital murder if, acting with the kind of culpability otherwise required for the commission of capital murder, he purposely engages in conduct

that constitutes a substantial step in a course of conduct intended or known to cause such a result. Ark. Code Ann. § 5-3-201(b) (Repl. 1997). Conduct is not a substantial step unless it is strongly corroborative of the person's criminal purpose. Ark. Code Ann. § 5-3-201(c) (Repl. 1997).

■■ It is well-settled that a motion for a directed verdict is a challenge to the sufficiency of the evidence. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). In a non-jury trial, a motion for dismissal is the equivalent of a motion for a directed verdict in a jury trial. *Green v. State*, 79 Ark. App. 297, 87 S.W.3d 814 (2002).

■ For evidence to be sufficient, there must be substantial evidence, direct or circumstantial, to support the verdict, meaning that the evidence must be forceful enough to compel a conclusion one way or the other without having to resort to speculation and conjecture. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). In reviewing a challenge to the sufficiency of the evidence, the court will view the evidence in a light most favorable to the State and consider only the evidence that supports the conviction. *Id.*

■■ Circumstantial evidence may constitute substantial evidence to support a defendant's conviction, but only if it excludes every reasonable hypothesis other than the guilt of the accused. *Carter v. State*, 324 Ark. 395, 921 S.W.2d 924 (1996). The question of whether circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is generally reserved for the factfinder. *Id.* Furthermore, a criminal defendant's intent or state of mind can rarely be proven by direct evidence and must usually be inferred from the circumstances of the crime. *Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997).

■ Upon review, this court determines whether the fact finder resorted to speculation and conjecture in reaching its decision. *Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000). Two equally reasonable conclusions as to what occurred merely give rise to a suspicion of guilt. *Id.* We will set aside a judgment based upon evidence that did not meet the required standards, and thus left the fact finder only to speculation and conjecture. *Id.*

In this case, the evidence viewed in the light most favorable to the State reveals that, during the early morning hours on June 22, 2002, Trooper Moss became involved in a vehicle pursuit and foot chase of a suspect who fled after a traffic stop. While searching

for the suspect, Moss was standing in a dimly lit street when he noticed a Suburban parked approximately thirty or forty yards away. Moss said that the streetlight "kind of gave off [an] orange glow" and that he had no trouble seeing.

At some point, the Suburban began moving towards Moss with its headlights on. Moss then observed a flash from the passenger-side window of the Suburban and heard a pop, which he said he thought was a gunshot. According to his testimony, Moss believed that he was "shot at." Moss stated that he was the only person on the street at 1:30 a.m. and that there was nobody else around, so he believed that the vehicle's occupants were shooting at him.

A North Little Rock police officer testified that he later observed the Suburban "sliding around the corner . . . sideways, with the lights off." Two officers pulled the vehicle over, identified Demetrius Clark as the driver and Booker Simmons as the passenger, and found that the vehicle was full of bullet holes and shattered glass. The evidence showed that a weapon was found about a block and a half away from where the Suburban ultimately stopped, with one spent shell casing found inside the vehicle on the passenger side. The spent shell casing was later determined to have come from the weapon found nearby. There was also testimony that Clark and Simmons had just left the home of Felicia Wright, the aunt of the suspect that Trooper Moss was chasing on foot.

Based on this evidence, we cannot say that the trial judge had to resort to speculation and conjecture in convicting Simmons for criminal attempt to commit capital murder. Moreover, the determination of whether the evidence excluded every reasonable hypothesis other than Simmons's guilt was a question for the trial court as factfinder. We therefore hold that there was substantial evidence in this case to support Simmons's conviction.

Affirmed.

STROUD, C.J., and GLADWIN, ROBBINS, JJ., agree.

NEAL and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse and dismiss this case based upon the insufficiency of the State's evidence that there was an intent to commit capital murder, that is to cause the death of a law enforcement officer, or for that matter, anyone at all.

This case boils down to whether there was sufficient evidence, circumstantial or otherwise, to support the conviction of attempted capital murder of a police officer, pursuant to Ark. Code Ann. § 5-10-101(3) (Repl. 1997) and § 5-3-201 (Repl. 1997), specifically, whether there was an attempt to kill the officer. Booker Simmons argues on appeal that the officer's testimony that, while he was on foot, he merely heard a shot and saw a flash from the passenger window of the vehicle in which Simmons was riding, was not sufficient evidence of such intent. I can find no precedent supporting a conviction on such flimsy evidence where no one has actually been shot. There was no evidence of the direction in which the gun was aimed, or testimony from the officer that the shot came anywhere near him or even in his direction. Indeed the officer never saw the gun at all, much less the direction in which it was pointed. It is not reasonable to infer from the circumstances of this case that there was an attempt or intent to kill or even to shoot the officer. Even considering the way in which the vehicle was driven, the flight from the scene after the vehicle was riddled with a clip full of bullets by the officer, and the fact that a gun was discarded during the flight, the trier of fact would need to resort to speculation and conjecture to conclude that Simmons was attempting to kill as opposed to creating a distraction or issuing a threat by merely firing a gun from the window of the vehicle. *See Salley v. State*, 303 Ark. 278, 796 S.W.2d 335 (1990) (affirming conviction and finding sufficient evidence of attempted murder where appellant pointed gun at officer, fired once, missed, and fired two more shots at officer while he was on the ground); *Abdullah v. State*, 301 Ark. 235, 783 S.W.2d 58 (1990) (affirming conviction and finding sufficient evidence where all the officers testified that they saw appellant and his accomplice point their guns at them and heard shots being fired).

It may well be that the State was overzealous in its prosecution of this case because a police officer was involved, or because one of the officer's barrage of gun shots fired at Simmons's fleeing vehicle entered a nearby house and grazed a child on the arm. Be that as it may, while the State may have had a case of unlawful discharge of a firearm from a vehicle, Ark. Code Ann. § 5-74-107(b)(1) (Repl. 1997), what it did not have was a case of attempted murder. This court has once again lowered the bar in a case that turns on a sufficiency analysis, and future similar prosecutions can, and likely will be based upon no evidence whatsoever of the requisite intent to kill.

NEAL, J., joins.