2010 Ark. App. 836

**Jennifer Mae RAMSEY, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 09–1371.**

Court of Appeals of Arkansas.

Dec. 15, 2010.

10. *Id.*

11. *Id.*

12. *See Barre v. Hoffman,* 2009 Ark. 373, 326 S.W.3d 415.

13. *Meadors v. Still,* 344 Ark. 307, 40 S.W.3d 294 (2001).

14. *Barre, supra.*

15. *Id.*

16. *See Davis v. Parham,* 362 Ark. 352, 208 S.W.3d 162 (2005).

Dustin Daniel Dyer, Dyer and Jones, Benton, for appellant.

Dustin McDaniel, Atty. Gen., Laura Shue, Asst. Atty. Gen., Little Rock, for appellee.

LARRY D. VAUGHT, Chief Judge.

Appellant Jennifer Ramsey was convicted as an accomplice to aggravated robbery and theft of property. On appeal she argues that the trial court erred in its denial of her directed-verdict motion and her motion for new trial. She also challenges the denial of a motion in limine. We find no error and affirm her convictions.

Patrick Chinemerem Mbawuike met Ramsey while conducting business at an insurance company. During the course of their initial conversation, she mentioned that she was interested in selling her 2001 Toyota Camry, but did not have clear title to the car as she still owed $3300. Mbawuike expressed interest in purchasing the vehicle and asked that she contact him once she secured clear title to the vehicle. A few weeks later Ramsey made contact with Mbawuike, and the two agreed to met at a Walgreens in southwest Little Rock at approximately 9:00 p.m. Although the two had not yet come to terms on the selling price, the parties agreed that Mbawuike would bring a large sum of cash in the event he decided to accept Ramsey's offer to sell the vehicle.

Mbawuike brought $2000 to purchase Ramsey's car. However, he had concerns about the appearance of the vehicle and wanted to take it for a test drive before he purchased it. Before taking the test drive, Mbawuike secreted the cash in his own vehicle. According to his testimony, shortly after beginning the "test drive" Ramsey asked Mbawuike to buy her a cocktail and directed him to a parking lot located down the street from Walgreens. She told Mbawuike that her uncle owned a liquor store at the location. Once they arrived, Mbawuike parked the vehicle, and Ramsey immediately exited the car.

Rodney Adkins (Ramsey's codefendant)[1] immediately jumped in the front seat of the vehicle; he was brandishing a knife, which he held to Mbawuike's neck. Adkins then ordered Mbawuike to tender his wallet. While Adkins was threatening Mbawuike, Ramsey voluntarily re-entered the vehicle and advised Mbawuike to follow Adkins's orders. Once Ramsey was back in the car, Adkins ordered Mbawuike to drive the vehicle. After driving around for about ten minutes, Mbawuike refused to drive any farther. Adkins eventually exited the vehicle and fled the scene on foot. Ramsey remained in the car and began pleading with Mbawuike not to call the police. Mbawuike drove Ramsey's vehicle back to Walgreens, returned to his own vehicle, cancelled his credit cards, and called the police. As Ramsey drove away, Mbawuike was able to write down her license-plate number and give it to the police.

Mbawuike told police officers that he was robbed at knife point by a white male in his early- to mid-thirties. Mbawuike described the suspect as approximately two-hundred pounds and five-feet-ten-inches tall. After being shown a photo line-up, Mbawuike identified both Ramsey

---

1. We affirmed Adkins's convictions in *Adkins v. State*, 2010 Ark. App. 328, 2010 WL 1487608.

and Adkins as the people he encountered that evening. Ramsey was convicted and sentenced to two consecutive ten-year sentences. It is from these convictions that she appeals.

▬▬ Ramsey first contends that because there was inadequate evidence to support her convictions, the trial court erred in its denial of her directed-verdict motions. She asserts that the evidence deduced at trial establishes that she was an innocent bystander, not an accomplice to robbery and theft. A motion for directed verdict is a challenge to the sufficiency of the evidence. *Tester v. State*, 342 Ark. 549, 30 S.W.3d 99 (2000). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* at 552–53, 30 S.W.3d at 101–02. Substantial evidence is evidence that is of sufficient certainty and precision to compel a conclusion. *Id.*, 30 S.W.3d at 101–02. Circumstantial evidence is substantial when it excludes every reasonable hypothesis consistent with innocence, and whether it does is a question for the jury. *Gregory v. State*, 341 Ark. 243, 15 S.W.3d 690 (2000). In a challenge to the sufficiency of the evidence, the appellate court reviews the evidence in the light most favorable to the State. *Id.* at 247, 15 S.W.3d at 693. Further, only evidence supporting the verdict will be considered. *Steggall v. State*, 340 Ark. 184, 8 S.W.3d 538 (2000).

▬▬ Guilt can be established without eyewitness testimony and evidence of guilt is not less because it is circumstantial. *Gregory*, 341 Ark. at 247, 15 S.W.3d at 693. The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* at 247–48, 15 S.W.3d at 694. The question of whether the circumstantial evidence excludes every

hypothesis consistent with innocence is for the jury to decide. *Id.* at 248, 15 S.W.3d at 694. Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*, 15 S.W.3d at 694. Overwhelming evidence of guilt is not required in cases based on circumstantial evidence; the test is one of substantiality. *Id.*, 15 S.W.3d at 694.

Specific to this case, a person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person employs or threatens to immediately employ physical force upon another person. Ark.Code Ann. § 5–12–102(a) (Repl. 2006). A person commits aggravated robbery if he commits robbery as defined in section 5–12–102(a) and is armed with a deadly weapon, represents by word or conduct that he or she is armed with a deadly weapon, or inflicts or attempts to inflict death or serious physical injury upon another person. Ark.Code Ann. § 5–12–103 (Repl.2006).

▬▬ In cases like Ramsey's, where the theory of accomplice liability is implicated, we affirm a sufficiency-of-the-evidence challenge if substantial evidence exists that the defendant acted as an accomplice in the commission of the alleged offense. *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991). A person is criminally liable for the conduct of another person when she is the accomplice of another person in the commission of an offense. Ark.Code Ann. § 5–2–402 (Repl.2006). Under Ark. Code Ann. § 5–2–403 (Repl.2006), an accomplice is defined as follows:

(a) A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or

facilitating the commission of an offense, he:

(1) Solicits, advises, encourages, or coerces the other person to commit it; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or committing it; or

(3) having a legal duty to prevent the commission of the offense, fails to make proper effort to do so.

(b) When causing a particular result is an element of an offense, a person is an accomplice in the commission of that offense if, acting with respect to that result with the kind of culpability sufficient for the commission of the offense he:

(1) Solicits, advises, encourages, or coerces the other person to engage in the conduct causing the result; or

(2) Aids, agrees to aid, or attempts to aid the other person in planning or engaging in the conduct causing the result; or

(3) Having a legal duty to prevent the conduct causing the result, fails to make proper effort to do so.

Ark.Code Ann. § 5–2–403 (Repl.2006). The determination of the status as an accomplice is ordinarily a mixed question of law and fact. *Cook v. State,* 350 Ark. 398, 407–09, 86 S.W.3d 916, 922–23 (2002).

At Ramsey's trial, Mbawuike testified to the following linking facts. He stated that after Ramsey requested that he buy her a drink, she got in the front seat of the car and led him to a remote area that did not seem like a liquor store because it was dark, had no drive-thru window, and he saw no liquor. He stated that as he turned off the engine, Ramsey exited the car and a white male immediately entered the car and placed a knife at his throat. The man, later identified as Adkins, demanded that Mbawuike tender his wallet (which he did) and begin driving.

In the meantime, Ramsey voluntarily entered the backseat of the automobile and sat in the center seat.

After Adkins ran away, Mbawuike informed Ramsey that he intended to call the police at which point she became apprehensive. Mbawuike observed that Adkins did not ask for Ramsey's purse, place a knife to her throat, or demand money from her. Throughout the ordeal, Mbawuike repeatedly inquired if Ramsey "set him up" to be robbed. She denied the allegations and defended herself by stating that she was so scared that she had "wet" her pants. But, Mbawuike testified that he observed no soiling of her pants. Also, after Mbawuike exited Ramsey's car, she quickly fled the scene—in the same direction that Adkins had taken flight.

Other linking testimony came from Little Rock Police Department Detective Robert Martin. He stated that Mbawuike identified Adkins and Ramsey as the two people who had committed the aggravated robbery and theft against him. Based on this identification, Martin questioned Ramsey (who came to the police station per his request). During questioning, Ramsey admitted that Adkins was an acquaintance of hers but denied that he was involved in the robbery. She described the person involved in the robbery as a short, Mexican male. She also stated that she did not remember seeing a weapon. Contemporaneously to this interview, Martin received a phone call from Will Oliver's Bail Bond Company.

Oliver stated that Adkins had come into the bail-bond office (located only a block away from the police station) seeking information relating to Ramsey. Oliver asked Martin, per Adkins's request, if Ramsey was going to be charged. At this point, according to Oliver, Adkins became nervous, and Martin and other officers observed Adkins running away from the bail-bond company. After a short chase, the

officers apprehended Adkins and took him into custody. Ramsey told Martin that her friend, Julia, dropped her off at the station that day. However, when Adkins was arrested, he had Ramsey's keys in his possession and her car was parked near the bail-bond office.

When viewing this testimony in the light most favorable to the State, substantial evidence supports Ramsey's convictions as an accomplice. She was present during the crime, and the State established a substantial association between Ramsey and Adkins—she admitted that he was an acquaintance of hers, he had Ramsey's car key in his possession, her car was parked near the bail-bond shop, and he made an inquiry relating to the pending investigation on Ramsey's behalf. Based on these "linking" facts, it was reasonable for the jury to conclude that Ramsey assisted Adkins by finding the mark, setting up the meeting, leading the victim to a remote location, assuring that the victim would have a substantial amount of cash, moving to the backseat of the car during the robbery, and by encouraging Mbawuike to give Adkins the cash. Furthermore, her version of events that paint her as an "innocent bystander" are undermined by the facts that she voluntarily returned to the car during the robbery, was never threatened by Adkins, and was linked to him via her car keys, car, and the bond inquiry. As such, it was reasonable for the jury to conclude that Ramsey aided or encouraged the commission of the charged crimes.

Ramsey also claims that the trial court erred in denying her a new trial because all of the evidence presented at trial was circumstantial. However, for the same reasons we have previously stated, the trial court was correct in denying the new-trial motion. There was substantial evidence to support the jury's conclusion—without resorting to speculation and con-

jecture—that Ramsey acted as an accomplice in the aggravated robbery and theft of property.

Finally, Ramsey claims that the trial court erred in its denial of her motion in limine. In her motion, Ramsey asserted that evidence involving her codefendant Adkins and her bail bond was irrelevant and prejudicial. On appeal, she specifically claims that the trial court should not have allowed Detective Martin's testimony relating to Adkins's involvement with Ramsey's bail because it was inadmissible under Arkansas Rules of Evidence 402, 403, and 404. However, evidentiary rulings are matters firmly within the trial court's discretion and will not be disturbed on appeal absent a showing of an abuse of that discretion and resulting prejudice. *Barnes v. State*, 346 Ark. 91, 55 S.W.3d 271 (2001), *cert. denied*, 535 U.S. 1022, 122 S.Ct. 1618, 152 L.Ed.2d 630 (2002).

We see no such abuse in this case. The evidence surrounding Adkins's bond inquiry was extremely relevant and probative to show Ramsey's connection to Adkins. Our rules of evidence have been interpreted to allow for the introduction of testimony of other criminal activity if it is independently relevant to the main issue, that is, relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal—which is precisely the case here. *Spencer v. State*, 348 Ark. 230, 236, 72 S.W.3d 461, 464 (2002). As such, because the evidence was highly probative and was independently relevant, the trial court did not abuse its discretion by denying Ramsey's motion in limine.

Affirmed.

GLADWIN and HENRY, JJ., agree.