Billy PIKE v. STATE of Arkansas

CR 95-949                                   912 S.W.2d 431

Supreme Court of Arkansas
Opinion delivered January 16, 1996

*William R. Simpson, Jr.*, Public Defender, by: *C. Joseph Cordi, Jr.*, Deputy Public Defender, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

BRADLEY D. JESSON, Chief Justice. The appellant, Billy Pike, was convicted of the capital murder of Sunday Stanfield and sentenced to life imprisonment without parole. His sole point on appeal is a challenge to the sufficiency of the evidence. We affirm.

On appeal, Pike raises specific points in support of his position that the State's evidence was insufficient to convict him of the capital murder charge. He argues that the State's evidence failed to exclude the substantial possibility that another man, Bobby Chapple, killed the victim. He also contends that a certified docket sheet admitted into evidence proved that Michelle Basey, the State's eyewitness, was in custody at the time she claimed to have witnessed the murder. Finally, he maintains that there was insufficient evidence presented that he killed the victim. In reviewing the motions for directed verdict that Pike made below, we conclude that only the last of these specific points was preserved for our review. At the close of the State's case, counsel for Pike stated as follows:

> We'll move for a directed verdict. Notwithstanding the credibility of some of the State's witnesses, Your Honor, I don't believe the State has shown sufficient evidence to show any kind of premeditated or deliberated purpose on the part of [Pike]. I guess, taking Miss Basey's testimony in the best light, at the very most we have from Miss Basey that she was in the basement with one shot, one shot that she testified to. She did not see Sunday Stanfield fall or have impact from, but she was standing right up in front of Billy Pike. And that was the only shot that she saw fired. She testified that she could not even tell us that it had hit its target, and then that she left that basement, and she heard one more shot. Other than that, we don't have anything causally connecting any incident or anything that Billy Pike did here. At the very most we got one shot that the State's best witness cannot say had any impact at all. So we don't even know if he shot her from what the State's presented today or presented in their case in chief.

(Following the deputy prosecutor's response, counsel for Pike continued as follows:

Your Honor, taking the State's case in its best light, I only recall hearing one shot after she left that basement. State says well, that obviously they had a third shot. They're speculating at best in regards to what had happened. The testimony of Miss Basey was Miss Stanfield was standing straight up, looking at him when he shot her in the head. There's no consistency with that testimony, and the testimony of the medical examiner was that she was shot two times behind the left ear. That is absolutely inconsistent with that testimony at all. She testified she didn't know what happened after she left that basement, and none of us know what happened after she left that basement. What the State has presented is that they've got a body in a basement. They've got what they think is the killer down there. They have him maybe firing a gun at the person, but not in the right direction that the medical testimony states, and that's it. And they want this Court to take all of that, and swallow it and say well, then, he must have been, only fired three times at her. And taking it, the inconsistencies in that testimony, it must have been four times, because the first one he shot when she was standing straight up, and he couldn't have physically have done what the medical examiner says happened, strike her two times behind the left ear.

At the close of all the evidence, Pike renewed his motion as follows:

I don't believe the State has shown any premeditated or deliberated purpose. Here at best, taking the testimony, what we would believe at this point, would be an incredible not a credible witness, that being the testimony of Miss Basey based upon the evidence, both in the State's case and in the Defense's case. Taking that evidence in its best light, Miss Basey said that she saw one shot, That Miss Stanfield was standing straight up, looking at Mr. Pike at the time a shot was fired. The testimony of the medical examiner was clearly that the weapon, the bullets hit her in the back of the head, and that Miss Basey left

out after one shot had been fired. And her testimony was she heard one more shot. She doesn't know anything about if it was at anybody or not at anybody, but that there is insufficient evidence to show that there's any evidence to show that Mr. Pike killed this woman with any nature, premeditated or anything.

It is well-settled that parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of the objections and arguments presented at trial. *Stewart* v. *State*, 320 Ark. 75, 894 S.W.2d 930 (1995); *Childress* v. *State*, 322 Ark. 127, 907 S.W.2d 718 (1995). This is true even in cases where the sentence is life without parole, as our duty is only to examine the record for error on objections decided adversely to the appellant, not to address arguments that might have been made. *Childress* v. *State, supra; see also* Ark. Sup. Ct. R. 4-3(h). Nowhere in Pike's motions for directed verdict did he mention Bobby Chapple's name, much less an argument that the State's proof failed to exclude the reasonable hypothesis that Chapple killed the victim. Nor did Pike present the argument that the certified docket sheet admitted into evidence proved that Michelle Basey was in custody at the time she claimed to have witnessed the murder. Thus, the only point we will consider is whether the State presented sufficient evidence that Pike committed the murder.

We have recently repeated our guidelines for reviewing challenges to the sufficiency of the evidence in *Mills* v. *State*, 322 Ark. 647, 910 S.W.2d 682 (1995):

> In a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State and sustains the judgment of conviction if there is substantial evidence to support it. *Abdullah* v. *State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Williams* v. *State*, 298 Ark. 484, 768 S.W.2d 539 (1989). In reviewing the sufficiency of the evidence, we need only consider evidence in support of the conviction. *Id.*

322 Ark. at 654, 910 S.W.2d at 686. Circumstantial evidence

may constitute substantial evidence when every other reasonable hypothesis consistent with innocence is excluded. *Nooner* v. *State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Trimble* v. *State*, 316 Ark. 161, 871 S.W.2d 562 (1994); *Sheridan* v. *State*, 313 Ark. 23, 852 S.W.2d 560 (1992); *Bennett* v. *State*, 308 Ark. 393, 825 S.W.2d 560 (1992). Whether a reasonable hypothesis exists is for the trier of fact to resolve. *Id*; see also *Hadley* v. *State*, 322 Ark. 472, 910 S.W.2d 675 (1995); *Walker* v. *State*, 313 Ark. 478, 855 S.W.2d 932 (1993).

The evidence, viewed in the light most favorable to the State, is as follows. On the morning of Tuesday, March 15, 1994, Bruce Stanfield found the body of his sister, Sunday Stanfield, in the basement of their mother's home at 1228 West 35th Street in Little Rock. The basement, according to Bruce, was a hideaway where he and others in the neighborhood smoked crack cocaine. Ollie Stanfield, the victim's mother, last saw her daughter around noon on Sunday, March 13. Officer Connie Simmons of the Little Rock Police Department arrived at the scene at approximately 11:00 a.m. on March 15 and located the victim lying in a fetal position with her left hand in her pocket. Officers recovered a copper projectile and two spent .38 shell casings near the body. The victim's clothing was also collected, which included a black t-shirt, blue pants, and a bra.

Michelle Basey testified that she was a crack addict when she met the victim at Cathy Morrison's house on a Sunday. The three smoked crack supplied by the victim. The victim left, telling Basey that she would be on Martin Luther King Street. Basey found the victim later that night with her sister, Odetta Stanfield, and the appellant, Billy Pike. The victim was dressed in the same clothing she was wearing when her body was discovered. The four ended up in a basement of a house, where Odetta got them some drugs then left. Basey stayed and began smoking crack cocaine. Pike and the victim were talking when Pike yelled, "Bitch you owe me." Basey, who had been a prostitute, understood this statement to mean that the victim owed Pike a sex act because he had paid her money. The victim kneeled down and began performing oral sex on Pike. When the victim stood back up, Pike slapped her. A fight broke out, and Pike pulled out a gun. Pike, who was facing the victim, pointed the gun to the victim's head and shot her. After Pike fired this shot,

the victim remained standing. Basey ran out the door. As she was running, she heard another gunshot. Basey did not see Bobby Chapple in the basement on the night the victim was shot. She did not go to the police that evening because she was scared, high on crack cocaine, and there was a warrant out for her arrest. Nearly one and one half months later, on April 28, Basey contacted police claiming to have been raped by Pike in a separate incident. At this time, she told police about witnessing the shooting of Sunday in the basement.

Detective James Chandler of the Little Rock Police Department initially developed Bobby Chapple as a suspect in the murder. Accompanied by counsel, Chapple turned himself in at the police department and denied any involvement in the crime. Chapple testified at trial that he knew the victim from the streets. He admitted that he had dealt drugs out of the home of a woman named Gwen Simmons. He further admitted to having had "run-ins" with Sunday over drugs and to having threatened her at her mother's house. He also stated that he had shot a gun into Simmons's house. Chapple specifically denied shooting Sunday Stanfield. He testified that he did not think it unusual for the same gun to have been used to shoot into Simmons's house and to have killed Sunday. According to Chapple, when a gun came up missing, he would just get another one. This was something that "happened every day." Detective Chandler offered similar testimony, stating that it was his experience that guns go through as many as 15 people, especially if used in a crime, and are often traded for drugs.

Dr. Charles Kokes, Associate Medical Examiner of the State Crime Lab, performed the autopsy on the victim. It was his opinion that the victim died from multiple gunshot wounds. One bullet entered the skull above the victim's left ear and exited her cheek. According to Dr. Kokes, the victim could have remained standing after sustaining this wound. Bruising around this wound indicated that the victim was alive at the time of impact. A second bullet entered behind the victim's left ear and had been delivered at close range. It was Dr. Kokes's opinion that the victim could not have remained standing after this wound. A third wound was a superficial wound caused when a bullet grazed the front of the victim's lower left leg. Cocaine was present in the victim's blood and urine. The small pipe in her

hand contained cocaine residue.

We do not decide whether the State's witnesses were credible. *State* v. *Long*, 311 Ark. 248, 844 S.W.2d 302 (1992). The jury has the right to believe all or any part of a witness' testimony. *Id*. The jury obviously believed Basey's eyewitness account and Chapple's denial that he was involved in the shooting over Pike's theory of the case. Stated another way, the jury was able to exclude every other reasonable hypothesis consistent with Pike's innocence. Basey's account can also be reconciled with the medical testimony. Basey said the victim remained standing after Pike pointed the gun to her head and shot; Dr. Kokes testified that the victim could have remained standing after sustaining one of the bullet wounds to the head. She heard a second shot; the victim was shot more than once. Basey said the victim had been smoking crack cocaine prior to her death; autopsy results indicated the presence of cocaine in the victim's blood and urine. Basey confirmed that the clothes the victim was wearing when her body was discovered were the same as those she was wearing at the time of the shooting. In sum, the State presented sufficient evidence that Pike committed the murder.

The record has been examined in accordance with Ark. Sup. Ct. R. 4-3(h), and no prejudicial error has been found which would warrant reversal.

Affirmed.