# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2018

_____

Eric Randall Nance,

          Appellant,

v.

Larry Norris, Director,
Arkansas Department of Correction,

          Appellee.

Appeal from the United States
District Court for the Eastern District
of Arkansas.

_____

Submitted: May 13, 2004
Filed: December 10, 2004

_____

Before MORRIS SHEPPARD ARNOLD, BEAM, AND MELLOY, Circuit Judges.

_____

BEAM, Circuit Judge.

Eric Randall Nance killed Julie Heath on October 11, 1993. The State of Arkansas charged him with capital felony murder with attempted rape as the underlying felony. After a jury trial, Nance was convicted. That crime was punishable by death under Arkansas law. The jury was again called upon to determine the aggravating and mitigating circumstances involved in Nance's case and make a recommendation regarding the death penalty. The jury found that two statutory aggravating factors existed, no mitigating factors existed, and recommended the death penalty, which the trial court imposed.

Nance appealed his conviction and sentence to the Arkansas Supreme Court, and he unsuccessfully sought state post-conviction relief. On September 13, 2000, Nance filed a petition for federal habeas relief in the Eastern District of Arkansas. The district court[1] denied the petition on January 22, 2003, and issued a certificate of appealability on April 16, 2003, on the following claims: (1) insufficiency of the evidence of attempted rape and (2) ineffective assistance of counsel. Nance claimed that his trial counsel were ineffective for a variety of reasons, four of which are included in the certificate. First, Nance argued that his trial counsel were ineffective for failing to investigate, present, and argue evidence of Nance's innocence of attempted rape during the guilt phase of his trial. Second, Nance argued that his trial counsel were ineffective for failing to support their requests for funding to employ experts in both the guilt and penalty phases of his trial. Finally, Nance argued that his trial counsel were ineffective in the penalty phase of his trial for failing to develop a mitigation case and for failing to object to victim-impact testimony. We affirm the district court's denial of the habeas petition.

## I.    FACTS

Julie Heath was last seen alive on October 11, 1993. That evening she left her home in Malvern, Arkansas, to visit her boyfriend in Hot Springs, Arkansas. Ms. Heath's car broke down on the way. Nance was returning to Malvern from Hot Springs in his pickup at about this time. When he left Hot Springs, he was dressed in a shirt, bib-overalls, and shoes. According to Nance, he stopped to help and offered Ms. Heath a ride to Malvern. Nance was later seen in a convenience store with no shoes, socks, or shirt. He also had dark, damp stains on his overalls that appeared to be fresh.

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

On October 18, 1993, Ms. Heath's body was found in a wooded area just off an unpaved road about seven miles from where she had left her car. The body was fully clothed. A photograph of the clothed body that was admitted into evidence[2] shows that the belt buckle was partially undone; the pants' zipper was partially zipped; and the portion of the shirt covering the body's right shoulder was torn. An officer testified at trial that the shirt was inside out when the body was found. And photographs of the shirt[3] once it was removed from the body reveal that the shirt's torn shoulder was its left shoulder. The officer also testified that he concluded the shirt was wrong-side out because when he saw the clothed body in the woods, the shirt's shoulder pad was on the outside surface of the garment. The shirt's other shoulder pad was found nearby.

> The medical examiner testified that when the body was presented to him it
>
> was dressed in one black shirt which was inside out, one pair of black jeans, one black belt, one pair of black socks, which were inside out, one pair of black shoes, a white bra, which was pulled up around the neck and shoulder area, pink panties, which were inside out. The shirt and pants were intact around the body. The belt was buckled and the zipper was partially zipped and a slightly soiled sanitary napkin was present.

The medical examiner also testified that the shirt was torn or cut near the shoulder.

---

[2]We note that the State has included two photographs in its Addendum. One of those photographs (Plaintiff's Exhibit 7 at trial), however, was not admitted into evidence. We base this recitation of facts on the evidence before the jury, with the narrow exception of the item mentioned below.

[3]These photographs were not used as evidence in the trial court, but the actual shirt was. We do not have the shirt and these photographs were used by Nance in the district court. No one has questioned whether they accurately depict the shirt.

A search of Nance's pickup revealed red pubic hairs in the cab. Ms. Heath had red hair and an expert testified that these hairs were microscopically similar to some taken from Ms. Heath's body.

Nance's defense theory was that he accidentally killed Ms. Heath. He claimed that when she was riding in his pickup she saw his knife (a box cutter), became hysterical, started kicking him and pulling his hair, and that he put his hand up to make her stop. He claimed that after he put his hand up, he realized the knife had become lodged in her throat. Though Nance did not testify, this version of his story arose at trial through his brother and sister, to whom he had told the same story.

In the guilt phase of the trial, the jury found Nance guilty of capital felony murder with attempted rape as the underlying felony. In the sentencing phase, the State presented as evidence six prior felony convictions stemming from Nance's rape and beating of two Oklahoma girls in 1982. Nance was released from his twenty-year sentence for those convictions five months before he killed Ms. Heath. Ms. Heath's mother also testified about how her daughter's death affected her and her family:

> Mr. Nance took my only daughter. I believe that he deserves the death penalty. He has ruined my family's life. I have been under constant doctor's care since her death. I've had to see a psychologist once a week. I'm on numerous medications. My life will never be the same again. This has affected all of my family. It's been very hard on my husband and my son. We basically do not know how we can live without her.

The State also argued that Nance killed Ms. Heath to avoid arrest.

To counter this aggravating evidence, Nance produced some mitigating facts. He offered his confession to police (which was not offered by the State in the guilt phase of the trial) to show remorse. That recitation recounted the story that was the

basis for his guilt-phase defense. In further support of his mitigation case, Nance introduced testimony from his brother, sister, mother, employer, and minister.

The jury found that two statutory aggravating circumstances existed beyond a reasonable doubt, that no mitigating circumstances existed, that the aggravating circumstances outweighed any mitigating circumstances beyond a reasonable doubt, and that "the aggravating circumstances justify beyond a reasonable doubt the sentence of death." The judge, following the jury's recommendation, sentenced Nance to death.

Nance appealed his conviction and sentence to the Arkansas Supreme Court, raising ten state-law grounds for reversal. Nance v. State, 918 S.W.2d 114, 117 (Ark. 1996) (Nance I). That court specifically refused to consider his constitutional arguments because they were supported by "conclusory allegations without supporting authority." Id.

Nance also filed for post-conviction relief in the trial court under Rule 37 of the Arkansas Rules of Civil Procedure, "alleging, among other things, that his trial counsel provided ineffective representation during the trial and penalty phases of his trial." Nance v. State, 4 S.W.3d 501, 502 (Ark. 1999) (Nance II). The trial court denied relief without a hearing and the Arkansas Supreme Court affirmed. Id. at 506.

Nance then filed a federal habeas petition in the Eastern District of Arkansas, raising approximately fourteen issues. The district court, on Nance's motion, appointed Dr. Bradley Diner under 21 U.S.C. § 848(q) to evaluate Nance's mental health. In Dr. Diner's initial report, he relates what Nance told him about Ms. Heath's death—a yet-unheard version of the facts. According to the report, Nance was involved in a sexual relationship with Ms. Heath. On October 11, 1993, Nance stopped at Wal-Mart to purchase a new box cutter. While there, he overheard someone say that Ms. Heath was HIV-positive. Given his past relations with Ms.

Heath, this information troubled Nance. On his way home, he saw Ms. Heath stopped on the side of the road. He picked her up, offering to give her a ride back to Malvern. On the way, he confronted her about the HIV rumors he had heard. Unsatisfied by her response, Nance became quite angry and hit Ms. Heath so hard that he broke her neck. Nance also said that he could not remember much of what happened. Dr. Diner also submitted a supplemental report. In that report, Dr. Diner presents a picture of Nance's social and family history, posits that those experiences contributed to the "worry and fear" Nance experienced on the night of October 11, 1993, and concludes that all of this culminated in Ms. Heath's death.

The district court dismissed the petition on January 22, 2003, and issued its memorandum opinion the next day. It is not clear how much, if any, of Dr. Diner's information was before the district court when it denied the petition. The memorandum opinion refers to some of Dr. Diner's work, while the certificate of appealability says Dr. Diner's reports were filed the day the memorandum opinion was filed. Even though the district court did not consider some or all of Dr. Diner's reports when it drafted its memorandum opinion, it issued a certificate of appealability on five issues, in part, because of Dr. Diner's reports: "[A] Certificate of Appealability will issue as to Petitioner's claim . . . so that the Circuit Court may determine the propriety of the consideration of this evidence arising from the report of Dr. Diner."

## II.    DISCUSSION

### A.

Nance first makes a sufficiency-of-the-evidence, due-process claim under Jackson v. Virginia, 443 U.S. 307 (1979). On direct appeal, the Arkansas Supreme Court addressed Nance's sufficiency claim on state-law grounds by evaluating whether the trial court erred in denying Nance's motion for a directed verdict. As

mentioned above, the court expressly refused to consider Nance's constitutional arguments. Nance I, 918 S.W.2d at 117. In reviewing the sufficiency of the evidence, the Arkansas court applied its "substantial evidence" standard. Id. ("'Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture.'") (quoting Pike v. State, 912 S.W.2d 431, 433 (Ark. 1996)). We, of course, do not evaluate whether the evidence was sufficient under state law, because errors of state law are not cognizable in federal habeas courts. See 28 U.S.C. § 2254(a). And this standard is arguably different than the due-process standard enunciated in Jackson.[4] Under the Antiterrorism and Effective Death Penalty Act, we must give a great deal of deference to state-court adjudications of constitutional claims, so long as those claims were "adjudicated on the merits in State court." 28 U.S.C. § 2254(d). An adjudication on the merits does not require that a state court invoke any particular language or devote any specific degree of attention to the claim, Brown v. Luebbers, 371 F.3d 458, 461 (8th Cir. 2004), petition for cert. filed, (U.S. Nov. 12, 2004) (No. 04-7227), but when a state court specifically disclaims addressing constitutional arguments, at the very least, section 2254(d) does not apply. So we review the sufficiency claim de novo, keeping in mind that underlying determinations of material fact that occurred in the state court (here the trial court) are "presumed to be correct" unless "rebutt[ed] . . . by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Under Jackson, a conviction transgresses the bounds of due process if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324. All conflicting inferences that arise from the historical facts must be resolved in favor of the prosecution. Id. at 326. Nance argues that there was insufficient evidence of the attempted rape. If we review the historical facts and construe them in the light most favorable to the prosecution (as we must), we

---

[4]We express no opinion on whether this standard is lower, higher, or the same as the Jackson standard.

conclude that Nance unbuckled Ms. Heath's belt, unzipped her jeans, and removed her shirt and socks. Ms. Heath's pubic hair was also found in Nance's truck. From this, a reasonable jury could conclude that Nance removed Ms. Heath's clothing. Removing Ms. Heath's clothing surely corroborates an intent to rape, at least where consent is not at issue, and constitutes a substantial step in the commission of that offense. Nance was also seen just after the killing in a state of partial undress. Thus, a reasonable jury could conclude that Nance removed Ms. Heath's and his own clothing with the intent to rape her. That is enough for attempted rape under Arkansas law. See Sasser v. State, 993 S.W.2d 901 (Ark. 1999); Ark. Code Ann. §§ 5-3-201 & 5-14-103.

Nance's arguments to the contrary, while appropriately made to a jury, are unconvincing here. For example, Nance argues that the shirt found on Ms. Heath's body was not inside out. Given the location of the tear or cut in the shirt's shoulder, a reasonable juror could have concluded that the shirt was inside out when the body was found. On the body, the tear appeared on the right shoulder. After the shirt was removed and turned right-side in, the tear was to the left shoulder of the shirt. And an officer who saw the body at the scene, as well as the medical examiner who received the body from the crime scene, testified that the shirt was inside out. Defense counsel made arguments to the contrary at trial, to no avail.

Nance argues that the sanitary napkin found with the panties establishes that the evidence is insufficient under Jackson. The medical examiner testified that the sanitary napkin "was present" and that the panties were on inside out. Defense counsel argued that, given the presence of the sanitary napkin, there was no inference that Nance ever removed those panties; Ms. Heath simply put them on inside out earlier that day. The prosecutor did not argue to the contrary, admitting in closing that sometimes "those kind of mistakes may have been made in dressing." Nance places a great deal of emphasis on the medical examiner's report that stated more specifically that the sanitary napkin was in the panties and over the body's genitalia.

But that evidence was never offered in the trial court.  It is therefore beyond our Jackson review.  Herrera v. Collins, 506 U.S. 390, 402 (1993).  And, in any event, we are not convinced that the jury drew the conclusion that Nance says it drew—that he removed Ms. Heath's panties.

After reviewing the record with the appropriate level of deference, we conclude there was no error under Jackson.  Nance also appears to argue that Dr. Diner's report "casts further doubt on the State's theory that Nance attempted to rape Ms. Heath."  Appellant's Br. at 9.  This evidence also was never presented to the jury; thus, it has no place in our Jackson analysis.  Herrera, 506 U.S. at 402.

**B.**

Next, Nance claims his trial counsel were ineffective in the guilt phase of his trial.  First, he argues that they failed to investigate, present, and argue evidence of Nance's innocence of attempted rape.  The district court held that this guilt-phase ineffective-assistance-of-counsel claim was procedurally defaulted because it had never been presented to the state courts.  The State has waived exhaustion.  Nance argues that Dr. Diner's report should excuse the procedural default under Schlup v. Delo, 513 U.S. 298 (1995).  We disagree.

Schlup allows a petitioner to raise a "gateway claim of actual innocence," Amrine v. Bowersox, 238 F.3d 1023, 1029 (8th Cir. 2001), that, if established, will allow him to present otherwise procedurally defaulted claims to the federal habeas court.  But the Schlup standard is quite high; the petitioner must come forward with new reliable evidence that was not available at trial, id., and he must show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."  Schlup, 513 U.S. at 327 (adopting the Murray v. Carrier, 477 U.S. 478 (1986), standard).  The sort of evidence that cannot be used for a Schlup gateway claim includes "evidence [that] could have been discovered earlier in the

exercise of due diligence." Cornell v. Nix, 976 F.2d 376, 380 (8th Cir. 1992) (en banc); accord Meadows v. Delo, 99 F.3d 280, 282 (8th Cir. 1996).

Nance's evidence is simply not new. His statements to Dr. Diner amount to a self-written affidavit, even though it is embodied in Dr. Diner's report. Conveniently, this affidavit does cast some doubt on an attempted-rape theory because the implications of Nance regarding Ms. Heath as HIV-positive draw into question whether he had the requisite intent to rape her. But even assuming this is true, all of this information was available to Nance at trial, on direct appeal, and throughout his post-conviction proceedings. Nance has provided no evidence of any sort of impediment to his ability to recall this information. And he does not challenge his competency at trial, including his ability to aid in his own defense. See Drope v. Missouri, 420 U.S. 162, 171 (1975) (stating that competency to stand trial includes the ability to aid in one's own defense). So he cannot now try to excuse a procedural default under Schlup.

Nance makes other arguments to bypass the procedural default as to this claim. But even if the default is excused, Nance's claim has no merit. See Stephens v. Norris, 83 F.3d 223, 224 (8th Cir. 1996) (stating that a court may bypass the procedural-default question and proceed to the merits). Nance claims his trial counsel were ineffective for failing to investigate, argue, and present evidence of innocence. Nance makes no effort to show what a more thorough investigation would have revealed. So his claim boils down to one of a failure to present and argue the available evidence of innocence. Again, Nance cites the shirt and panties issues as areas in which counsel fell short at trial. But counsel made arguments about both. With regard to the shirt, it is unclear what more counsel could have done. In closing arguments, Nance's counsel presented the shirt to the jury and pointed out the grass stains that Nance now argues are so important. Thus, in this regard, counsel's performance did not fall below an objective standard of reasonableness under Strickland v. Washington, 466 U.S. 668 (1984). As to the panties and the sanitary

napkin, Nance's counsel made the argument Nance says they should have made, but, he claims, they failed to introduce the autopsy report. Given the prosecutor's lack of argument in closing, defense counsel's specific reference to the medical examiner's testimony that the pad was in place, and the other evidence in the case, we see no "reasonable probability" that, but for this purported failure of counsel, "the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Nance also argues that his trial counsel were ineffective for not arguing to the jury that the bra on Ms. Heath's body was not "pulled up around the neck and shoulder area" as the medical examiner testified. The photo presented to the jury clearly shows that the bra was not in that position when the body was found. But this does not make the medical examiner's statement any less true, because the bra could have gotten in that position when the body was moved. That photo, which the jury had access to and presumably viewed, showed exactly what Nance claims his counsel failed to bring to the attention of the jury. And even though defense counsel did not argue the point, the prosecutor also did not argue the point. So we can see no way in which this omission fell below an objective standard of reasonableness or prejudiced Nance.

In sum, Nance's ineffective-assistance-of-trial-counsel claim remains procedurally barred despite Schlup, and it is without merit.[5]

_____

[5]It is not clear whether Nance has incorporated the Dr. Diner information into his ineffective-assistance claim or simply argued it as a way of lifting the procedural bar. Nance's knowledge of these events is, as we have held, not new evidence. And, again, Nance has not challenged his ability to assist in his own defense. Thus, insofar as Nance may be asserting an ineffective-assistance claim based on the Dr. Diner information, two possible scenarios appear. First, Nance did not tell his trial counsel about his HIV story, in which case his counsel did not breach any objective standard of reasonableness. Or, second, Nance did tell them and they chose as a matter of strategy not to pursue that theory of defense. This choice would not be unreasonable because if Nance's story were presented, the jury would then know that Nance had

Second, Nance argues that his trial counsel were ineffective in the guilt and penalty phases of his trial because they failed to support their requests for funding to employ various experts—a psychologist, a juristic psychologist, and an investigator. The trial court denied these requests. This claim was not procedurally defaulted because it was presented to the Arkansas court in Nance's Rule 37 motion and, neither that court nor the Arkansas Supreme Court disposed of the claim under an independent and adequate state procedural rule. Each court addressed the claim on the merits. This prior adjudication makes section 2254(d)'s deferential standard of review applicable. Under that standard, the district court was bound to deny the petition unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The district court concluded the Arkansas court's disposition of the claim did not exceed the bounds of section 2254(d). We agree.

The issue here is only whether Nance's trial counsel were ineffective for failing to substantiate their claims to the trial court that various experts were needed for Nance's defense. The federal habeas court also considered Nance's claim that his constitutional rights were violated because the trial court denied his requests for these same experts. It concluded that Nance's rights under <u>Ake v. Oklahoma</u>, 470 U.S. 68 (1985) (holding that indigent defendants have a due-process right to psychiatric assistance in some circumstances), had not been violated. The district court did not certify that issue for appeal, so we do not address it. We do note, however, that the basis for the district court's decision on the <u>Ake</u> claim was that Nance had not made a sufficient showing of need. Nance claims now that the failure to make the

told four different stories of the incident, and it likely would have strengthened the State's case for premeditated murder or even the other lesser-included murder offenses that were charged. We see no merit in this claim.

-12-

necessary showing was attributable to his trial counsel and that this was objectively unreasonable because Nance badly needed that assistance. Of course, the original Ake arguments rested on the notion that Nance, through counsel, had made a sufficient showing of need. In any event, Nance has failed to overcome section 2254(d). The Arkansas Supreme Court articulated the Strickland standard and applied it to the limited facts Nance presented. Nance II, 4 S.W.3d at 504. Nance has offered no reason why that court's determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), in light of the record before it. See Holland v. Jackson, 124 S. Ct. 2736, 2738 (2004) (reminding courts that the section 2254(d) inquiry must be made in light of the record before the state court). In short, Nance offered no basis for funding that existed at the time of trial that counsel failed to communicate to the trial court.

Nance's next claim has to do with the effectiveness of his penalty-phase trial counsel. He argues that his penalty-phase trial counsel failed to properly develop a mitigation case. This claim is closely related to Nance's funding-request claim because, he says, psychiatric assistance would have enabled him to present more evidence of mitigation. But whichever way Nance presents the claim, it is without merit under AEDPA. The mitigation claim was also adjudicated on the merits in state court. Thus, section 2254(d) governs our review. The Arkansas Supreme Court, in ruling on the Rule 37 appeal, held that Nance had failed to establish both aspects of Strickland: objectively unreasonable representation and prejudice. As with the funding-request claim, Nance has not explained why the Arkansas Supreme Court's ruling, on the record that was before it, is not entitled to section 2254(d) deference. And, again, we find no error in the Arkansas Supreme Court's application of law to fact or its conclusion.

Nance's final claim is that his penalty-phase trial counsel were ineffective because they failed to object to victim-impact testimony. Ms. Heath's mother, Nancy

Heath, testified at the penalty trial. She said, "I believe that he deserves the death penalty." This statement is inadmissible under Arkansas law, see Greene v. State, 37 S.W.3d 579, 584 (Ark. 2001), but that does not mean the failure to object falls below a standard of objective reasonableness. In fact, a reasonable lawyer may wish to refrain from objecting to this type of statement when uttered by the victim's grieving mother, in front of a jury, and in the midst of her impact testimony. Of course, we need not go that far. This claim was adjudicated on the merits in the Arkansas Supreme Court in the Rule 37 appeal, so section 2254(d) applies. The Arkansas Supreme Court found that Nance had not established professionally unreasonable representation with regard to this claim, because not objecting to such testimony was a valid trial strategy. Nance II, 4 S.W.3d at 505. And it concluded that Nance had not shown prejudice—a reasonable probability that Nance would not have been sentenced to death had counsel objected. Id. We do not think the Arkansas Supreme Court misapplied Strickland. And, while we may have our doubts about whether it was reasonable for counsel not to object, we can only grant the writ if we think the Arkansas court applied Strickland unreasonably. It did not, and we have found no materially indistinguishable cases from the Supreme Court of the United States.

We have evaluated the balance of petitioner's claims that were certified for appeal, including his various claims for an evidentiary hearing, and we find them without merit.

## III. CONCLUSION

We affirm.

_____

-14-