Euphrates WHITT *v.* STATE of Arkansas

CR 05-1181                                          232 S.W.3d 459

Supreme Court of Arkansas
Opinion delivered March 16, 2006

*Wright & Van Noy,* by: *Herbert T. Wright, Jr., P.A.,* for appellant

*Mike Beebe,* Att'y Gen., by: *Misty Wilson Borkowski,* Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Euphrates "Fat Boy" Whitt was convicted of aggravated robbery and capital murder in the Union County Circuit Court. He was sentenced to a term of life imprisonment for the aggravated-robbery charge and a term of life imprisonment without the possibility of parole for the capital-murder charge, with the sentences to run consecutively. Whitt's sole point on appeal is that the circuit court erred in denying his motions for directed verdict. As Whitt was sentenced to life imprisonment without parole, this court's jurisdiction is proper pursuant to Ark. Sup. Ct. R. 1-2(a)(2). We find no error and, accordingly, we affirm.

Whitt was charged with capital murder committed in the course of an aggravated robbery. A person commits capital murder if "[a]cting alone or with one (1) or more persons, he commits or attempts to commit. . . robbery, . . . and in the course of and in furtherance of the felony, or in immediate flight therefrom, he or an accomplice causes the death of any person under circumstances

manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-10-101(a)(1) (Repl. 1997). Pursuant to Ark. Code Ann. § 5-12-103(a)(1) (Repl. 1997), a person commits aggravated robbery if he commits robbery and is armed with a deadly weapon or represents by word or conduct that he is so armed. A person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately thereafter, he employs or threatens to immediately employ physical force upon another. Ark. Code Ann. § 5-12-102(a) (Repl. 1997).

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004). This court has repeatedly stated that in reviewing a challenge to the sufficiency of the evidence, we review the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Stone v. State*, 348 Ark. 661, 74 S.W.3d 591 (2002). We affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Haynes v. State*, 346 Ark. 388, 58 S.W.3d 336 (2001).

Circumstantial evidence may constitute substantial evidence to support a conviction. *Ross v. State*, 346 Ark. 225, 57 S.W.3d 152 (2001). The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Id.* The question of whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the jury to decide. *Id.* Upon review, this court must determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.*

Whitt contends that a review of the evidence presented, in the light most favorable to the State, clearly shows that the jury could not have arrived at the verdict without resorting to speculation and conjecture. We disagree.

The testimony and evidence at trial revealed the following facts. On April 5, 2002, at around 8:00 p.m., Whitt and Adam Norris drove past Hughes Grocery & Bait Shop, onto Dollar Junction Road in Huttig. According to Adam, Whitt asked him to pull over so he could relieve himself. Adam backed off of the road, turned the car off, and took the keys out of the ignition. Adam

testified that Whitt then took the keys from him and announced that he was going to rob the store. Adam said that when Whitt left, he was wearing a dark blue or black hooded sweater and black jeans.

At around 8:30 p.m. that night, Tommy Norris stopped by Hughes Grocery to get something to eat. He said that just as he approached the store, the door opened and out walked a black man wearing a blue sweatshirt with the hood pulled down and his head bowed. Tommy said that he noticed that the man had a "piece of paper or something" hanging off of him. Once inside the store, Tommy realized that something was not right, at which time he turned around and saw the same man running off down Dollar Junction Road. Inside the store, Tommy found the victim, Jason Hughes, lying face down in a pool of blood.

Adam Norris testified that after Whitt had been gone for about fifteen to twenty minutes, he returned to the car, breathing hard. Adam said that Whitt was no longer wearing the hooded sweatshirt, but was now dressed in a white tee shirt. Adam testified that Whitt gave the car keys back to him, pointed a gun at him, and told Adam to take him to El Dorado. During the drive to El Dorado, Whitt appeared to be in discomfort. Adam said that Whitt told him he was going to pass out, and that Whitt also stated, "I think I shot the guy in the leg," and "mother fucker shot me in the fucking back." Adam said that once they reached El Dorado, where there was more light, he saw that Whitt had blood on the side of his tee shirt. Whitt directed Adam to drop him off on College Road in El Dorado. Before exiting Adam's vehicle, Whitt told Adam that if he said anything about what had happened, he would kill him. Then, Whitt threw $2.00 in the car and limped off up the road.[1]

George Snowden and Ahmad Murphy testified that on the night of April 5, 2002, they were at Snowden's home on North College in El Dorado. At about 10:00 p.m., Whitt knocked on the back door, wearing a white, sleeveless tee shirt and black pants. Snowden said that Whitt told him that some guys had jumped on him and that he had been shot. Because Whitt appeared to be in

---

[1] Adam testified that earlier in the evening, Whitt had promised to put $2.00 worth of gas in Adam's car in exchange for a ride to Strong. However, after Adam pumped gas at a gas station, Whitt told him he did not have any money. Adam said that he left his I.D. with the store clerk with a promise to come back and pay for the gas.

pain and was holding his side, Snowden said that he offered to call an ambulance or take him to the hospital, but Whitt refused and said, "No, no, no, I'll get in trouble." Instead, Whitt requested that Snowden and Murphy call Terrance Williams.

Williams testified that on the night of April 5, he was riding around town with friends when Murphy called him and told him to come home because Whitt had been shot. According to Snowden, Williams arrived at the house and said, "Fat Boy, what the fuck you done did?" Snowden said that Whitt replied, "Man, I fucked up." Whitt stayed at Snowden's house that night, sleeping on top of a plastic bag placed on the floor so that he would not get any blood on the carpet. The next morning, Whitt, Williams, and Snowden called around and found out that Whitt could get a bus ticket leaving out of the bus station in Monroe, Louisiana, going to Birmingham, Alabama. Williams drove Whitt to the bus station in Monroe. According to Williams, during the drive to the bus station, Whitt told him that he had tried to rob a man in a store and thought that he had shot the man.

The State also presented medical and forensic evidence at trial. Dr. Steven Erickson, medical examiner for the Arkansas State Crime Lab, performed the autopsy on Hughes's body. Dr. Erickson testified that of the gunshot wounds Hughes suffered, both the wound entering the back of the head and the wound entering the right chest area could have been fatal. Finally, Dr. Erickson testified that the manner of death was homicide.

Mark Thomas, a criminal investigator with the Union County Sheriff's Office, testified that a dark blue, hooded sweatshirt, size 2X, with two ten-dollar bills and one twenty-dollar bill in the pocket, was found approximately 98.9 feet from the corner of the store's parking lot and 10 feet from Dollar Junction Road. Thomas said that blood on the front of the sweatshirt was identified as belonging to Hughes. Terry Rolfe, a forensic biologist at the Arkansas State Crime Lab, testified that a partial DNA profile taken from the sweatshirt was consistent with Whitt's DNA. Rolfe opined that Whitt's DNA was on the sweatshirt.[2] Investigators also

---

[2] Rolfe could not say that the partial DNA profile taken from the sweatshirt resulted in a match with Whitt's DNA within all "scientific certainty." However, the lab report gave the following statistical data with regard to Whitt's DNA matching the partial DNA profile found on the hooded sweatshirt: "The probability of selecting an individual at random from the general population having the same genetic markers as those identified on [Whitt] and

recovered a piece of cash register tape, and blood found on the tape was identified as belonging to Hughes. Blood was also found on the passenger seat of Adam's car. Forensic testing of the fabric on the seat revealed that the blood belonged to Whitt.

We do not decide whether the State's witnesses were credible. *Pike v. State*, 323 Ark. 56, 912 S.W.2d 431 (1996). The jury has a right to believe all or any part of a witness's testimony. *Id.* The jury apparently believed the testimony from Adam, Snowden, Murphy, and Williams concerning Whitt's actions and admissions on April 5, the night the crimes were committed, and April 6, the day Whitt left town. Moreover, the jury apparently found credible the testimony regarding the forensic evidence that linked Whitt to the crimes.

In addition to the foregoing testimony and evidence linking Whitt to the crimes, the State also presented evidence that Whitt fled. Adam testified that when Whitt returned to the car after the robbery, Whitt forced him, at gunpoint, to drive him to El Dorado. The following day, Williams took Whitt to the bus station in Monroe, Louisiana, with a destination of Birmingham, Alabama. The record reveals that Whitt was apprehended more than two years later, in Chicago, Illinois. This court has frequently held that flight following the commission of an offense is a factor that may be considered with other evidence in determining probable guilt and may be considered as corroboration of evidence tending to establish guilt. *Woods v. State*, 363 Ark. 272, 213 S.W.3d 627 (2005); *Coggin, supra*; *Chapman v. State*, 343 Ark. 643, 38 S.W.3d 305 (2001).

In sum, there is substantial evidence to support Whitt's convictions for aggravated robbery and capital murder. The jury need not have resorted to speculation or conjecture to find that Whitt committed the crimes. Pursuant to Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to the appellant, and no prejudicial error has been found.

Affirmed.

---

[the sample from the sweatshirt] is 1 in 17 billion in the Caucasian population, 1 in 7 billion in the Black population, 1 in 2 billion in the Southeastern Hispanic population, and 1 in 516 million in the Southwestern Hispanic population."