
# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR-14-607

| | |
|---|---|
| | **Opinion Delivered** March 11, 2015 |
| WILLIAM DEWEY GILL<br>APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. CR-2013-287] |
| V. | |
| | HONORABLE ROBERT EDWARDS, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Chief Judge

Appellant William Gill appeals his convictions on charges of negligent homicide and failure to maintain adequate liability insurance by the White County Circuit Court. He argues that the circuit court erred in not dismissing the negligent-homicide charge because the State failed to present sufficient evidence (1) of criminal negligence and (2) that he caused the death of Ms. Emmaly Holt. He also argues that the circuit court erred in not dismissing the inadequate-insurance charge because the State did not prove that he failed to carry adequate insurance. We affirm.

On March 29, 2012, appellant was traveling on North Apple Street in Beebe, Arkansas. The victim, Ms. Holt, was traveling on Hwy 367, with no requirement to stop, yield, slow down, etc. at the intersection of those two roads. Appellant reported that he "stopped at the stop sign on Apple," and "looked both ways," but "did not see anyone

coming." Appellant proceeded through the stop sign, and a collision occurred between his vehicle and Ms. Holt's vehicle. Appellant remained at the scene, and the police were called and responded. Ms. Holt was determined to be deceased at the scene of the collision.

During the investigation, blood testing determined that appellant had neither drugs nor alcohol in his system at the time of the collision; however, results indicated that Ms. Holt did have cannabinoids in her blood at the time of the accident. The undisputed facts are that Ms. Holt was not evaluated by a medical doctor, and no autopsy was performed as a part of the investigation. On October 28, 2013,[1] the State filed a misdemeanor information, alleging that appellant committed the offenses of negligent homicide and failure to maintain adequate liability insurance.

On January 22, 2014, this matter was tried before the bench. The State's proof at trial included the testimony of Arkansas State Trooper Andy Simpson, who testified that on March 29, 2012, at approximately 10:45 a.m., he was dispatched to Beebe, Arkansas, specifically, the intersection of Highway 367 and North Apple Street. Trooper Simpson testified that, upon arriving, he observed two vehicles on the east shoulder of the road—a pickup truck and a smaller car—post-impact, with the pickup still up against the driver's side door of the smaller car. According to Trooper Simpson, the impact appeared to have occurred entirely in the right, northbound lane of Highway 367, the lane in which Ms. Holt's vehicle was traveling, with the pickup truck traveling eastbound on North Apple. He noted that the impact of the truck had pushed the car sideways, completely off the road and

---

[1]This was an appeal from district court.

2

into the grass next to the intersection. Trooper Simpson further testified that there were stop signs on both sides of North Apple; that vehicles on Highway 367 had the right-of-way; and that the weather conditions that day were clear and dry.

Trooper Simpson explained that he measured the distance between the stop sign on North Apple and the point of impact of the collision to be approximately forty-three feet. Trooper Simpson also testified that the driver of the smaller car, identified as Ms. Holt, was still in her vehicle and was obviously deceased. As part of his investigation, Trooper Simpson documented gouge marks in the concrete of the eastbound lane that established the point of impact. He stated that, given the point of impact, it did not appear that Ms. Holt attempted to veer or otherwise take evasive action as appellant's truck came into her lane. Similarly, there were no skid marks associated with appellant attempting to brake. Trooper Simpson testified that he made contact with appellant, who gave a statement with regard to the collision, claiming that he stopped at the stop sign, but "did not see" Ms. Holt's vehicle.

Trooper Ron Laslo, qualified as an expert in accident reconstruction, testified that he investigated the collision between appellant's and Ms. Holt's vehicles and reached certain conclusions with regard to the speed and respective direction of travel of the vehicles. Trooper Laslo testified that appellant's truck was traveling at a minimum of ten miles per hour; that the vehicles collided in Ms. Holt's lane; and that there were no skid marks visible from either way made by either vehicle.

Robert Burns, a deputy coroner with the White County Coroner's Office, testified that he was summoned to the collision site where he pronounced Ms. Holt dead. Based

SLIP OPINION

upon his training as a coroner, Mr. Burns testified that it was his opinion that the cause of Ms. Holt's death was blunt trauma and lacerations to the left side of the head and body as a result of her vehicle's collision with appellant's vehicle. Mr. Burns also noted that there were no other signs, other than the collision, as to why Ms. Holt died that day.

At the conclusion of the State's proof and of all the evidence, appellant moved for dismissal of the charge of negligent homicide on two specific bases: first, that the State failed to present substantial evidence of criminal negligence; and second, that the State failed to produce substantial evidence of Ms. Holt's cause of death. Appellant also moved for dismissal with regard to the insurance charge, alleging that the evidence admitted at trial through the State's witness was sufficient to overcome any rebuttable presumption that he did not have proper insurance. Those motions were denied.

The circuit court found appellant guilty of both offenses and sentenced him to six months in the county jail and an aggregate of $2500 fines and costs pursuant to a sentencing order filed on January 24, 2014. Appellant filed a timely notice of appeal on January 31, 2014, and an amended notice of appeal on February 19, 2014, which included a February 10, 2014 order denying indigency with respect to producing the transcript and record for appellate purposes.

A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is considered a challenge to the sufficiency of the evidence. *Rule v. State*, 2014 Ark. App. 390, 438 S.W.3d 279. In reviewing a challenge to the sufficiency of the evidence in a criminal conviction, the evidence is viewed in the light most favorable to the State, and this

court affirms if the verdict is supported by substantial evidence. *Id*. Substantial evidence is evidence that induces the mind to go beyond mere suspicion or conjecture, and that is of sufficient force and character to compel a conclusion with reasonable certainty. *Id*. Circumstantial evidence may constitute sufficient evidence to support a conviction, but it must exclude every other reasonable hypothesis other than the guilt of the accused. *Whitt v. State*, 365 Ark. 580, 232 S.W.3d 459 (2006). The question whether the circumstantial evidence excludes every other reasonable hypothesis consistent with innocence is for the trier of fact to decide. *Id*.

I. *Sufficiency of the Evidence Re: Negligence - Negligent Homicide*

A person commits negligent homicide if he or she negligently causes the death of another person. Ark. Code Ann. § 5-10-105(b)(1) (Repl. 2006). Negligent homicide is a Class A misdemeanor under this subsection. Ark. Code Ann. § 5-10-105(b)(2). The criminal code defines "negligently" as follows:

> (A) A person acts negligently with respect to attendant circumstances or a result of his or her conduct when the person should be aware of a substantial and unjustifiable risk that the attendant circumstances exist or the result will occur.
> (B) The risk must be of such a nature and degree that the actor's failure to perceive the risk involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation considering the nature and purpose of the actor's conduct and the circumstances known to the actor.

Ark. Code Ann. § 5-2-202(4) (Repl. 2006). Negligent conduct is distinguished from reckless conduct primarily in that it does not involve the conscious disregard of a perceived risk. *Law v. State*, 375 Ark. 505, 292 S.W.3d 277 (2009). In order to be held to have acted negligently, it is not necessary that the actor be fully aware of the perceived risk and recklessly disregard

it. *Id.* It requires only a finding that under the circumstances he should have been aware of it and his failure to perceive it was a gross deviation from the care a reasonable, prudent person would exercise under those circumstances. *Id.*

Appellant submits the following in support of his argument: (1) Ms. Holt was not wearing a seat belt at the time of the collision; (2) Ms. Holt had recently smoked marijuana (or at least had somehow introduced Cannabinoids into her system within the twenty-four hours preceding the accident); (3) Ms. Holt could have been traveling at a speed as high as fifty-two miles per hour in a forty-five mile-per-hour zone; (4) appellant stopped at the stop sign on Apple Road; (5) appellant looked both ways on Highway 367; (6) appellant did not see Ms. Holt driving on Highway 367; (7) appellant was not cited for failure to stop at a stop sign; (8) appellant was not impaired by alcohol or drugs; (9) there was no testimony that appellant was driving recklessly, in a dangerous manner, or that he was not attentive. Appellant maintains that the facts clearly indicate that he perceived the risk and took appropriate steps to avoid an accident. Appellant argues that his actions were not a gross deviation from the standard of care and reiterates that there was no testimony that he was driving in a manner inconsistent with a person demonstrating reasonable care prior to the accident.

Appellant notes the circuit court's comments that a case with facts such as these is rarely prosecuted, if at all, at least in this jurisdiction. Appellant claims that the appellate courts of Arkansas have not addressed a case with the factual particulars of his case and cites cases from other states for guidance. In *State v. Green*, 647 S.E.2d 736 (W. Va. 2007), the

SLIP OPINION

Supreme Court of Appeals of West Virginia decided an analogous case that involved a traffic infraction wherein Green failed to keep a proper watch for others and ultimately collided with a car that was stopped in the road to make a turn. The result was the death of a passenger in the stopped car and the death of an oncoming motorcyclist. The *Green* court held, in part, that a conviction for negligent homicide must not be premised solely upon the violation of a traffic statute unless the underlying act, which constitutes the violation or accompanying circumstances, evidences a reckless disregard for the safety of another, characterized by negligence so gross, wanton, and culpable as to show reckless disregard for human life. *Green*, 647 S.E.2d at 746.

*Green* is distinguishable because the applicable statute in that case, West Virginia Code § 17C-5-1(a) (1979), provides that "[w]hen the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle anywhere in this state in *reckless disregard* of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." (Emphasis added.) The West Virginia statute is more akin to the Arkansas offense of manslaughter, which, like the West Virginia statute, requires reckless conduct in the face of a perceived risk. Ark. Code Ann. § 5-10-104(3) (Repl. 2006).

Appellant also cites *State v. Krovvidi*, 58 P.3d 687 (Kan. 2002), in which Krovvidi was convicted at the trial-court level for vehicular homicide after proceeding through an intersection, believing he had a green light, and causing the death of Hawthorne after striking his vehicle. The appellate court in *Krovvidi* held that the amount of deviation from the standard of care was insufficient to support the conviction for vehicular homicide because

7

the defendant had not been drinking and was not under the influence of any drug, none of his passengers warned him as he was about to enter the intersection or were concerned that his driving appeared reckless or that he was accelerating or speeding as he approached the intersection, and the defendant, who was not speeding, proceeded through the intersection thinking his light was green. *Krovvidi*, 58 P.3d at 697. Appellant maintains that *Krovvidi* is analogous—primarily because the only mistake he made was his failure to see Ms. Holt's vehicle after stopping at the stop sign.

*Krovvidi* is also distinguishable. Krovvidi was convicted of vehicular homicide after he was found, through inattention, to have run through a traffic light that had turned red and struck another vehicle in the intersection that had stopped to make a left turn. The court held that under those facts the State had failed to prove a "material deviation" from the standard of care as required by the applicable statute. *Id.* The court, however, did note that "the manner in which a defendant operates his or her vehicle under the totality of the circumstances presented is the proper focus of an inquiry concerning the element of a 'material deviation' required for conviction" under the Kansas statute. *Id.* Unlike a stoplight with moving traffic alternately yielding the right-of-way, as in *Krovvidi*, appellant was required to come to a complete stop, yield to traffic on the highway, and proceed into the roadway *only if the lane was clear*. The undisputed facts indicate that he did not do so.

Appellant cites *Phillips v. State*, 204 Ark. 205, 212, 161 S.W.2d 747, 750 (1942), in which our supreme court stated the following regarding criminal negligence:

> The courts and the authorities agree, in the absence of statutory regulations, that a higher degree of negligence is required to establish criminal negligence than to

establish liability in a civil action. The negligence required in a criminal proceeding must be more than a lack of ordinary care and precaution. It must be something more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life. It must be shown that a homicide was not improbable under all of the facts existing at the time, and that the knowledge of such facts should have had an influence on the conduct of the offender.

(Internal citations omitted.) Appellant submits that the distinction between criminal and civil liability in a case of this nature has more recently been distinguished correctly in the dissent in *Utley v. State:*

I do not believe that the General Assembly intended that persons be prosecuted criminally based on conclusions of mere inattention as is the apparent basis of the decision in this case. . . .

Historically, liability for deaths in automobile accidents caused by common negligence have been resolved through civil litigation. Where the death has resulted from mere negligence in driving, criminal liability has not been imposed. Where there was more than mere negligence, such as in the case of intoxication, high-speed flight from police, or negligence that arises from a gross deviation from how a reasonably prudent person would act, criminal liability has been imposed over the course of many years. While wandering over the centerline is certainly very dangerous, it is an occurrence that, unfortunately, is commonly witnessed in everyday driving. Many dangerous actions that inattentive drivers engage in do not give rise to criminal liability.

366 Ark. 514, 519, 237 S.W.3d 27, 30 (2006) (Hannah, C.J., dissenting). Appellant claims that the facts in this case likewise do not rise to the level of a gross deviation of reasonable care; accordingly, there was insufficient proof to convict him of negligent homicide, and this matter should be reversed.

We disagree. In its consideration of whether appellant's conduct rose to the level of being criminally negligent, the circuit court observed that the collision occurred on a dry, clear day and that the view of the highway, and, consequently, Ms. Holt's vehicle, was

SLIP OPINION

unobstructed. The circuit court also noted that, irrespective of whether appellant stopped at the stop sign, or simply rolled past it, he should have perceived that any traffic on the highway had the right-of-way. Under either scenario, and considering the evidence in the light most favorable to the State, we hold that the circuit court did not err in finding that appellant's failure to perceive the danger in not yielding the right-of-way was a gross deviation from the standard of care.

The circuit court's ruling was based upon the weather conditions at the time of the collision and the physical evidence produced by it. For example, Trooper Simpson testified that the distance between the stop sign requiring appellant to stop was forty-three feet from the point of impact. Trooper Laslo testified that appellant's vehicle was going at least ten miles per hour when it struck Ms. Holt's vehicle, sending it completely off the roadway. As the circuit court observed, whether appellant stopped at the stop sign and proceeded into the roadway, or rolled through the stop sign, his conduct in either case, given the attendant circumstances, was a gross deviation from the standard of care a reasonable person would exercise. The fact that there are drivers who would disregard a traffic sign, or drive inattentively, does not diminish the danger and the risk that is disregarded.

## II. *Sufficiency of the Evidence - Cause of Death*

The *corpus delicti* requires the State to prove, independent of a confession, the following two elements: (1) an injury or harm constituting the crime, and (2) that the injury or harm was caused by someone's criminal activity. Ark. Code Ann. § 16-89-111(d) (1987). In a murder case, this means that the State must prove the deceased came to his death at the

hands of another person. *Weaver v. State*, 324 Ark. 290, 920 S.W.2d 491 (1996). In the instant case, appellant maintains that the State failed to provide sufficient evidence that he caused the death of Ms. Holt. He points to an absence of testimony about Ms. Holt's physical condition before the accident on March 29, 2012. Instead, the State offered testimony of Mr. Burns, the deputy coroner for White County, who testified that his non-expert opinion as to the cause of death "to the best of my knowledge, was blunt trauma and lacerations to the left side of the body into the head as a result of the accident." Mr. Burns acknowledged that he did not investigate beyond going to the scene and personally observing Ms. Holt in the car. Mr. Burns also testified that there was neither an autopsy performed nor an evaluation of Ms. Holt by a medical doctor.

Appellant also notes that Mr. Burns admitted that he did not know whether Ms. Holt might have had a stroke and died, or died from some other cause, prior to the impact. Given the fact that there was no testimony regarding Ms. Holt's medical condition prior to the accident, and the fact that Ms. Holt tested positive for illegal substances, appellant maintains that the conclusion that she died as a result of the accident is conjecture and speculation and insufficient to sustain the negligent-homicide conviction.

We disagree. Based on Mr. Burns's testimony regarding the injuries to Ms. Holt and the photographic evidence of the injuries to her neck and head, we hold that the circuit court properly rejected appellant's hypothesis that Ms. Holt could have died prior to the collision from a stroke or a heart attack. Moreover, not every case requires the results of an autopsy, a medical doctor's opinion of the cause of death, or expert testimony. *See Sims v.*

11

*State*, 258 Ark. 940, 530 S.W.2d 182 (1975). Both the fact of death and the cause of death may be shown by strong, unequivocal circumstantial evidence so as to leave no ground for reasonable doubt. *Id*. Where there is some proof of the *corpus delicti*, the weight and sufficiency are properly left to the fact-finder. *Id*. Appellant attempts to distinguish *Sims*, *supra*, because in *Sims* the decedent's husband was an eyewitness to the decedent's having been shot twice at close range. He claims that in that instance, there was testimony of the condition of the decedent before she was shot and an eyewitness to the gunshots striking the victim, factors that are absent in the instant case. His argument, however, goes more to the weight of the evidence. Here, the circuit court, sitting as the fact-finder, properly weighed, and ruled out other potential causes of death posed by the defense.

### III. *Sufficiency of the Evidence - Inadequate Insurance Charge*

Arkansas Code Annotated § 27-22-104 (Supp. 2013), provides, in pertinent part:

(a)(1) It is unlawful for a person to operate a motor vehicle within this state unless the motor vehicle and the person's operation of the motor vehicle are each covered by:

. . . .

(B) An insurance policy issued by an insurance company authorized to do business in this state.
(2)(A) Failure to present proof of insurance coverage at the time of a traffic stop or arrest or a failure of the Vehicle Insurance Database or proof of an insurance card issued under § 23-89-213 to show current insurance coverage at the time of the traffic stop creates a rebuttable presumption that the motor vehicle or the person's operation of the motor vehicle is uninsured.

Accordingly, it is unlawful for a person to operate a motor vehicle within this state unless the motor vehicle and the person's operation of the motor vehicle are each covered by a certificate of self-insurance under section 27-19-107 or an insurance policy issued by an

SLIP OPINION

insurance company authorized to do business in this state. When the operator of any motor vehicle is involved in a motor-vehicle accident in this state and the vehicle or the operator while driving the vehicle is found not to be adequately insured, as required by section 27-22-104(a)(1), the operator shall be deemed guilty of a Class A misdemeanor. Ark. Code Ann. § 27-22-105 (Supp. 2013).

At trial, appellant provided proof of insurance on the Dodge Ram pickup that he was driving on March 29, 2012. The coverage period indicated was from December 16, 2011, through June 15, 2012. The State offered the testimony of Stephanie May, the State Farm Insurance agent who handled appellant's account, regarding the insurance coverage on that truck. Ms. May testified that she believed that appellant's policy had lapsed on February 16, 2012, the basis for that belief was that it was "what is in the computer." Ms. May acknowledged that she did not know if appellant had coverage somewhere else at the time of the collision. Appellant claims that the circuit court resorted to speculation or conjecture in determining that he did not have adequate insurance coverage for his vehicle on March 29, 2012, because the State failed to provide sufficient proof that appellant committed the offense of driving without adequate insurance.

We hold that the circuit court did not err in determining that appellant did not have adequate insurance coverage for his vehicle at the time of the collision with Ms. Holt. Trooper Simpson testified with regard to insurance coverage that appellant provided him with supposed insurance coverage documentation; however, the document reflected coverage for a time period prior to the collision and did not reflect coverage on the day the

13

collision occurred. Trooper Simpson testified that at no time did appellant ever provide him with additional documentation reflecting coverage for the date of the collision.

Ms. May's testimony reflected that she was a State Farm Insurance agent who previously had written policies of insurance for appellant. She explained that appellant's automobile insurance went out of force on February 16, 2012, for nonpayment of the premium. She further testified that the policy had not been renewed as of the date of the collision, March 29, 2012. Ms. May clarified that the renewal certificate offered by appellant as Defendant's Exhibit #7 was not proof of insurance, but was merely an offer of insurance for the stated period of time. The exhibit, admitted without objection, also bears the name of Ms. May, who was the agent servicing the policy. No other proof of insurance was offered by appellant at trial.

We note the circuit court's comment that when appellant was operating a vehicle and was involved in an automobile accident, he produced a document that was not for the time period in question when asked to provide proof of insurance. The circuit court credited Ms. May's testimony that his insurance was out of force at the time of the accident, yet appellant provided nothing that contradicted her testimony. Although appellant asserts that the document that was admitted at trial as Defendant's Exhibit #7 was proof of insurance, Ms. May, who is the agent whose name appears on the document, contradicted that assertion after stating mistakenly that it was proof of insurance. Appellant did offer any other proof that he was covered by State Farm or any other insurance company. Accordingly, we hold that the evidence presented at trial, properly viewed in the light most favorable to the State,

SLIP OPINION



justifies the ruling by the circuit court with regard to the lack of adequate insurance coverage.

Affirmed.

KINARD and BROWN, JJ., agree.

*Hancock Law Firm*, by: *Charles D. Hancock*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.