Robert C. TAYLOR *v.* STATE of Arkansas

CA CR 04-1262                                          223 S.W.3d 80

Court of Appeals of Arkansas
Opinion delivered January 18, 2006

22

*Dover Dixon Horne P.L.L.C.*, by: *Nona M. Morris*, for appellant.

*Mike Beebe*, Ark. Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. Appellant Robert C. Taylor was convicted of five counts of first-degree forgery and one count of first-degree continuing criminal enterprise in connection with the possession and uttering of counterfeit money. He was sentenced to 600 months in the Arkansas Department of Correction. On appeal, appellant argues that: (1) the trial court erred in denying his motions for directed verdict; (2) the trial court erred in denying his objection based upon ineffective assistance of counsel; (3) the trial court erred in denying his motion for mistrial. We affirm in part and reverse and dismiss in part.

The facts of this case are as follows. On January 14, 2004, the State filed a felony information charging appellant with six counts of first-degree forgery. The State filed an amended information on March 16, 2004, charging appellant with six counts of first-degree forgery and one count of first-degree continuing criminal enterprise. At some point, count two, one of the first-degree forgery charges, was nolle prossed. On May 13 – 14, 2004, a jury trial was held in the Drew County Circuit Court.

During the trial Sherry Price testified that, on January 3, 2004, she worked as a cashier at the Save-A-Lot Store. Around 8:00, a man came in and attempted to pay for two dollars' worth of

merchandise with a one-hundred-dollar bill. Ms. Price described the bill as waxy, slimy, and burned around the edges. The man informed Ms. Price that the reason the bill looked so bad was because his house had recently burned. Ms. Price told the man that she could not break a one-hundred-dollar bill and called her manager. The manager marked the bill with a "counterfeit pen" and the edges of the bill changed color. When the manager refused to take the bill, the man left the store. Ms. Price said that State's Exhibit One looked like the bill appellant tried to pass. She remembered the burned hole on the bill. From the stand, Ms. Price identified appellant as the person who tried to pass the bill.

Mark Hodnett, general manager at the Save-A-Lot Store, remembered being called to the front by a cashier to look at an "unusual" one-hundred-dollar bill. He said that, when he examined the bill, he could not determine if it was good, so he suggested that appellant take the bill to the bank to have it verified. When shown State's Exhibit One, Mr. Hodnett said that it appeared to be the same bill. He described it as being covered in tape and having a burned hole. Mr. Hodnett identified State's Exhibit Four as the photo line up that he was later shown. He recalled picking number five as the person who came into the store. He identified appellant as number five.

Stanley Pryor, a clerk at the Pine Hill Liquor Store, testified that during the first week of January 2004, he took a one-hundred-dollar bill from appellant. After appellant left, Mr. Pryor became suspicious, so he asked his manager to check the bill. When his manager marked the edges of the bill, it indicated the bill was counterfeit. Mr. Pryor identified State's Exhibit Two as looking like the bill he took. Mr. Pryor said that, a few days later, appellant returned and attempted to make a purchase using a ten-dollar bill. When he told appellant the money was counterfeit, appellant protested, so he called his manager. Mr. Pryor identified State's Exhibit Three as the ten-dollar bill. He said he recognized the mark he made on it.

Darrell Snuffer, also an employee of the Pine Hill Liquor Store, testified that, on January 3, 2004, appellant came into the store and passed a counterfeit one-hundred-dollar bill. He said that appellant returned to the store on January 6 and, when asked his name, appellant identified himself. He said that, on this occasion, appellant tried to pass a ten-dollar bill. Mr. Snuffer identified State's Exhibit Two as the one-hundred-dollar bill. He identified State's Exhibit Three as the ten-dollar bill. He recalled that the

sides of the ten-dollar bill tested "bad." Mr. Snuffer said that, when questioned about the one-hundred-dollar bill, appellant denied passing it. He said that appellant insisted that the ten-dollar bill was good; however, Mr. Snuffer believed the bill was suspect and asked appellant to remain in the store until the sheriff came. Appellant refused and left the store. Mr. Snuffer followed appellant outside the store and wrote down appellant's license-plate number and traveling directions.

John Dement of the Monticello Police Department testified that he investigated the passing of the counterfeit bills at the Pine Hill Liquor Store. He said that the liquor store had video surveillance, and he managed to obtain the videotapes for the evenings of January 3 and January 6. Officer Dement identified State's Exhibits Six and Seven as the original videotapes. From a review of the videotapes, Officer Dement recognized appellant. During Officer Dement's testimony, the videotapes were played and Officer Dement provided narration. He identified appellant on the videotapes. He said that he had known appellant several years and said "[I am] familiar with the way he carries himself, how he looks, the way he walks. I can identify him from those features, and when I watch the film, I see [appellant] entering Pine Hill Liquor."

At the conclusion of Officer Dement's testimony, appellant moved for mistrial. He argued that based on Officer Dement's testimony concerning his personal contact with appellant, the jury would assume the contact arose out of some type of criminal activity. The trial court denied appellant's motion but offered a cautionary instruction. Appellant declined the offered instruction.

David Anderson, the mayor of Monticello, testified that appellant's mother rented an apartment from him, and that appellant lived with his mother. Mayor Anderson identified State's Exhibit Nine as a Wal-Mart sack with money in it that he found while raking pine straw in the back of his apartment complex. He said that he found the bag against the wall next to appellant's mother's apartment. Mayor Anderson testified that he turned the bag over to the police chief.

Jessica Green, the mother of appellant's child, testified that on January 6, she and appellant went to the Cracker Box Food Store. She said that appellant asked her to take a one-hundred-dollar bill in and have it checked. Before taking the bill, she asked if the bill was fake, and appellant replied that it was real. She said that State's Exhibit One looked like the bill appellant gave her. She

said it had the same texture and the same hole. When she took the bill inside the store, she was told that the bill was counterfeit and that the store was keeping the bill. Ms. Green said that, afterwards they went to the Pine Hill Liquor Store. Appellant then went inside the liquor store and, after about fifteen minutes, appellant came back outside. The manager followed appellant outside. When the manager told appellant he had a fake bill, appellant and the manager started arguing. Eventually, appellant and Ms. Green left and went back to appellant's apartment. Shortly thereafter, they were arrested. During her testimony, Ms. Green recalled that, in the past, appellant had mentioned he wanted to counterfeit some money.

Kevin Brooks, appellant's friend, recalled being at appellant's home one day and seeing some money lying on appellant's bed. When shown State's Exhibit One, Mr. Brooks said that he saw a one-hundred-dollar bill similar to the one in the exhibit amongst the money on the bed. Mr. Brooks testified that appellant offered to give him a one-hundred-dollar bill in exchange for twenty dollars. He also said that, while there, appellant had him retrieve a can of hair spray from a closet.

Betty White testified that her daughter, Amanda Lewis, was an acquaintance of appellant. She said that while appellant was in jail, she learned that Amanda and appellant were exchanging letters. Immediately following this statement, appellant moved for mistrial. He argued that Ms. White's statement suggested that appellant was previously involved in criminal activity. The trial court denied the motion, and appellant informed the trial court that he did not want a curative instruction.

Amanda Lewis identified State's Exhibit Twelve as a letter appellant sent to her while he was in jail. She read the letter aloud for the jury. The letter provided:

> What's up? Me, well you know, is Keith still missing? What this about Big Ed we know? [sic] so what pass you to write me? O, [sic] I get it, you want some of that counterfeit money I got, Huh? The Secret service came down to investigate, but needless to say, as usual, I was one, or maybe two steps ahead. All they got off of me was a $10.00 bill at Pine Hill, but they say I spent much more around town. I say if I did, I did not know. Because you cannot mark it with one of those pens and it would show to be real.

Following Ms. Lewis's testimony, the following transpired:

APPELLANT'S COUNSEL: Your Honor, Defendant has some problems with Counsel.

TRIAL COURT: Tell him to come on up.

APPELLANT'S COUNSEL: Your Honor, the Defendant has advised Counsel that he is displeased about certain motions and objections and other things about the proceedings, that he is dissatisfied with Counsel. Counsel advised Defendant that at the end of the trial he might want to go ahead and file a Rule 37 alleging ineffective assistance of Counsel. The Defendant has advised Counsel he wants to make that complaint at this time, and so I asked if the Court would want to hear him. Now, under these circumstances, I have serious problems with continuing as counsel for the Defendant.

TRIAL COURT: It's not timely. A decision has not been reached in this case. You hadn't put your defense on at this point. So we're in the midst of the trial and [appellant's counsel] is very experienced.

APPELLANT: Yes, I understand, but also I'd like for the Court to know that, according to this, what I received, is, I never knew until yesterday that I was to be here for a forgery case. I was under — According to this that I received from her, I was to here for breaking and entering, and it's Docket Number CR-20030158-4-B, set of [sic] jury trial May 11 through 14.

APPELLANT'S COUNSEL: Your Honor, I want to say for the record that certainly it puts me in what is an uncomfortable position at this point of the trial. I want to assure the defendant and the Court that I will certainly do my utmost to continue to represent him, but it certainly puts a strain on our position.

TRIAL COURT: Well, that's just a part of the practice of law in this country.

Next, appellant's counsel again moved for mistrial. He informed the trial court that appellant had just informed him that the alternate juror may have seen appellant in handcuffs. Appel-

lant's counsel argued that it prejudiced appellant's chances for a fair trial. The trial court denied the motion; however, this time appellant accepted the trial court's offer to admonish the alternate.

Scott Woodward, Special Agent with the Arkansas State Police, testified that on December 29, 2003, he was contacted by Secret Service concerning appellant. Afterwards, he began conducting surveillance of appellant. He said that on January 3, 2004, he learned that a white male had passed a counterfeit one-hundred-dollar bill at the Pine Hill Liquor Store. The following Monday, local authorities sent Special Agent Woodward the bill and the surveillance tape from the liquor store. Special Agent Woodward identified State's Exhibit One as the bill he received. He said that from viewing the surveillance tape, he identified appellant and developed probable cause for a search warrant. On the morning of January 6, a search warrant was issued for appellant's residence. On the way to execute the search warrant, appellant was seen walking toward the Save-A-Lot Store. Special Agent Woodward said appellant was wearing the same clothes that he had on in the January 3 surveillance tape. He observed appellant enter the store, and a few minutes later, he observed appellant walk out of the store and head toward his mother's apartment.

Special Agent Woodward then drove over to the Save-A-Lot Store and asked the manager if a white male wearing a tan ball cap, tan shirt, and blue jeans had been in the store earlier. The manager replied yes and said that appellant had attempted to pass a counterfeit one-hundred-dollar bill. When shown a photo lineup, the manager identified appellant as that man. When asked if there was anything unique about the Save-A-Lot bill, Special Agent Woodward replied that he was told it was a one-hundred-dollar bill that had been burned on the corner. Special Agent Woodward testified that, later that evening, the same bill showed up at the Cracker Box Food Store. However, this time, a white female had passed the bill. Special Agent Woodward said that same evening a man fitting appellant's description tried to purchase alcohol from the Pine Hill Liquor Store with a counterfeit ten-dollar bill.

Special Agent Woodward testified that on January 12, he received a Wal-Mart bag containing $161 that had been received by the chief of the Monticello Police Department. The bag contained ten-dollar bills that were exactly the same as the ten-dollar bill appellant tried to pass at the Pine Hill Liquor Store. Special Agent Woodward also testified that hair spray is associated with counterfeit money production.

At the conclusion of the State's case, appellant moved for a directed verdict as to each of the remaining counts in the information. The trial court denied appellant's motions. Appellant then rested without putting on any evidence. At the conclusion of his case, appellant renewed his motions for directed verdict. The trial court denied appellant's renewed motions.

The jury returned a verdict of guilty on the remaining five counts of first-degree forgery and the one count of first-degree continuing criminal enterprise. Appellant was sentenced to twenty years on each of the first-degree-forgery counts and fifty years on the first-degree continuing-criminal-enterprise count. The trial court ordered that the sentences for each count run concurrently with each other. This appeal followed.

Appellant first argues that the trial court erred when it denied his motions for directed verdict. We treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Turbyfill v. State*, 92 Ark. App. 145, 211 S.W.3d 557 (2005). In our review of the evidence, we seek to determine whether the verdict is supported by substantial evidence. *Id*. In determining whether there is substantial evidence to support the verdict, we review the evidence in the light most favorable to the State and consider only the evidence that supports the verdict. *Saul v. State*, 92 Ark. App. 49, 211 S.W.3d 1 (2005). Substantial evidence is that evidence which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. Furthermore, we do not weigh the credibility of the witnesses on appeal; such matters are left to the factfinder. *Turbyfill v. State, supra*.

### First-Degree-Continuing-Criminal-Enterprise

Appellant first challenges the sufficiency of the evidence to support his first-degree-continuing-criminal-enterprise conviction. A person commits the offense of engaging in a continuing criminal enterprise in the first degree if he:

> (A) Commits or attempts to commit or solicits to commit a felony predicate criminal offense; and
>
> (B) That offense is part of a continuing series of two (2) or more predicate criminal offenses which are undertaken by that person *in concert with two (2) or more other persons* with respect to whom that person occupies a position of organizer, a supervisory position, or any other position of management.

Ark. Code Ann. § 5-74-104(a)(1) (Repl. 1997) (emphasis added). Appellant specifically argues that: (1) the incidents were two separate events and not a continuous series of events; (2) there was no evidence that he acted "in concert" with anyone; (3) there was no evidence establishing that appellant acted as the supervisor or organizer; (4) there was no evidence corroborating the testimony of his two so-called accomplices.

## 1. Whether there was a continuing series of events.

■ We begin by first addressing appellant's contention that there was no evidence establishing a continuing series of events. Appellant failed to make this argument below. It is well settled that this court will not address arguments raised for the first time on appeal. *Davidson v. State*, 358 Ark. 452, 193 S.W.3d 254 (2004). Accordingly, this argument is not preserved for appellate review.

## 2. Whether appellant acted in concert with anyone.

■ Appellant next argues that there was no evidence establishing that he acted "in concert" with anyone. The phrase "in concert" has been defined as acting in mutual agreement in a common plan or enterprise. *See Jones v. State*, 333 Ark. 208, 969 S.W.2d 618 (1998). The State alleges that appellant acted in concert with Ms. Green and Mr. Brooks. The evidence established that appellant had Ms. Green pass a counterfeit one-hundred-dollar bill at the Cracker Box Food Store. Ms. Green testified that appellant had assured her that the bill was real. As to Mr. Brooks, the evidence established that, while Mr. Brooks was visiting appellant, appellant offered him a one-hundred-dollar bill in exchange for twenty dollars, and that Mr. Brooks refused this offer. Mr. Brooks also testified that, while there, appellant had him retrieve a can of hair spray. Even when we view this evidence in a light most favorable to the State, there was no evidence establishing that appellant and Mr. Brooks were engaged in a mutual agreement. Thus, there was no evidence establishing that appellant acted in concert with two or more other persons.

We, therefore, reverse and dismiss his first-degree continuing-criminal-enterprise conviction. Because we are reversing and dismissing appellant's conviction, we do not address

his remaining arguments challenging the sufficiency of the evidence to support his first-degree-continuing-criminal-enterprise conviction.

*First-Degree Forgery*

Appellant also challenges the sufficiency of the evidence to support his first-degree forgery convictions. Arkansas Code Annotated section 5-37-201 (Repl. 1997) provides:

> (a) A person forges a written instrument if with purpose to defraud he draws, makes, completes, alters, counterfeits, possesses, or utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize that act.

> (b) A person commits forgery in the first degree if he forges a written instrument that is:

>> (1) Money, a security, a postage or revenue stamp, or other instrument issued by a government;

"Utter" as used in section 5-37-201 "means to transfer, pass, or deliver or cause to be transferred, passed, or delivered to another person any written instrument, or to attempt to do so." Ark. Code Ann. § 5-37-101(7) (Supp. 2005); *see also Ruffin v. State*, 83 Ark. App. 44, 115 S.W.3d 814 (2003). Appellant specifically argues that there is no evidence that he acted with intent. A criminal defendant's intent or state of mind can rarely be proven by direct evidence and must usually be inferred from the circumstances of the crime. *Simmons v. State*, 89 Ark. App. 34, 199 S.W.3d 711 (2004).

When we view the evidence in a light most favorable to the State, there is substantial evidence establishing that appellant acted with intent. Appellant repeatedly tried to pass counterfeit bills at local businesses. Furthermore, he offered Mr. Brooks one of his bills in exchange for twenty dollars. Based on appellant's conduct, a jury could find that he acted with intent.

*Ineffective Assistance of Counsel*

Appellant next argues that the trial court erred when it denied his ineffective-assistance-of-counsel objection. It is well settled that this court will not consider ineffective assistance as a

point on direct appeal unless that issue has been considered by the trial court. *Ratchford v. State*, 357 Ark. 27, 159 S.W.3d 304 (2004). Additionally, the facts surrounding the claim must be fully developed, either during the trial or during hearings conducted by the trial court. *Id.* The reason for this rule is that an evidentiary hearing and finding as to the competency of appellant's counsel by the trial court better equips the appellate court on review to examine in detail the sufficiency of the representation. *Id.* The trial court is in a better position to assess the quality of legal representation than we are on appeal. *Id.*

As set out above, in the middle of trial, appellant made the trial court aware that he was unsatisfied with his counsel's representation. The trial court informed appellant that his objection was untimely, *i.e.*, too early. Therefore, appellant's objection was not considered by the trial court, and we cannot address his claim of ineffective assistance of counsel.

It is worth noting that appellant also filed a Rule 37 petition. However, his petition was filed after the filing of the notice of appeal with this court. Arkansas Rule of Criminal Procedure Rule 37.2(a) provides that "[i]f the conviction in the original case was appealed to the Supreme Court or Court of Appeals, then no proceedings under this rule shall be entertained by the circuit court while the appeal is pending." Accordingly, we do not have jurisdiction to address appellant's Rule 37 petition.

### Motion for Mistrial

In his last argument on appeal appellant asserts that the trial court erred when it denied his motion for mistrial following the testimony of Officer Dement that introduced appellant's prior bad acts. A mistrial is a drastic remedy, which should only be used when the error is so prejudicial that justice cannot be served by admonition. *Ashlock v. State*, 64 Ark. App. 253, 983 S.W.2d 448 (1998).

Here, appellant waited until the conclusion of Officer Dement's testimony to make his mistrial motion. Motions for mistrial must be made at the first opportunity. *Flowers v. State*, 92 Ark. App. 29, 210 S.W.3d 907 (2005). The policy reason behind this rule is that a trial court should be given an opportunity to correct any error early in the trial, perhaps before any prejudice occurs. *Id.* Furthermore, appellant fails to cite authority in support

of his argument. It has been held that a failure to cite authority is also a reason to affirm. *Ashley v. State*, 358 Ark. 414, 191 S.W.3d 520 (2004).

In conclusion, we affirm appellant's first-degree-forgery convictions and hold that his arguments alleging ineffective assistance of counsel and that the trial court erred in denying his motion for mistrial.lack merit. However, we hold that appellant's first-degree continuing-criminal-enterprise conviction was not supported by substantial evidence and thereby, reverse and dismiss that conviction.

Affirmed in part, reversed and dismissed in part.

ROBBINS and ROAF, JJ., agree.